UNITED STATES, Appellee,

v.

Sergeant First Class Ricky C. HULLETT, 413–98–5698, United States Army, Appellant.

ACMR 9101803.

U.S. Army Court of Military Review.

23 Feb. 1993.

For Appellant: Captain Michael Huber, JAGC (argued); Major Robin L. Hall, JAGC (on brief).

For Appellee: Captain Glenn L. Kirschner, JAGC (argued); Colonel Dayton M. Cramer, JAGC, Major Timothy W. Lucas, JAGC (on brief).

Before CREAN, GONZALES, and DELL'ORTO, Appellate Military Judges.

OPINION OF THE COURT

GONZALES, Judge:

Contrary to his pleas, the appellant was found guilty, by a general court-martial

composed of officer and enlisted members, of two specifications of communicating indecent language and one specification each of indecent acts and obstruction of justice, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 (1982) [hereinafter UCMJ]. The convening authority approved the adjudged sentence of a bad-conduct discharge and reduction to Private E1.

Appellant asserts six assignments of error, two of which contend that: (1) the evidence is insufficient to convict the appellant of obstruction of justice, and (2) the evidence is insufficient to convict the appellant of one of the specifications of communicating indecent language. We agree with the first assertion and set aside the findings of guilty of that offense, but we disagree with the second assertion and affirm the findings of guilty of that offense.

The facts surrounding the obstruction of justice offense occurred on 4 April 1991, when the appellant approached Specialist (SPC) N to apologize for his bad behavior towards her between January and March 1991, while they were in Saudi Arabia during Operation Desert Shield/Storm. The appellant, a married soldier, had been SPC N's second line supervisor in the Division Support Command's (DISCOM) communications section since September 1989. Specialist N testified that the appellant said "he was sorry" for all the bad things that had happened between them, and that he wanted to "apologize for them and call a truce." When SPC N did not respond immediately, the appellant further stated that he was "going to throw out all [of SPC N's] counseling statements" and "give her a clean slate to work with." He continued by expressing the hope that in anticipation of their return to Fort Campbell, Kentucky, they could "just leave everything in the desert that happened in the desert." Spe-

cialist N simply told the appellant that "maybe" she would accept his apology and agree to a truce.

Specialist N was tentative because she was bothered by her belief that the appellant had approached her in an attempt to influence her to "drop" the investigation she recently had initiated and to "not do anything about the [indecent] letter, the incidents, or anything." However, she testified that besides herself, only her first line supervisor, Sergeant (SGT) Howard, knew that she had reported the appellant's sexual harassment to the DISCOM chaplain and legal officer. Sergeant Howard testified that he did not tell the appellant that SPC N had reported the appellant's sexual harassment conduct. Sergeant Howard did not believe that the appellant knew about any type of inquiry against him concerning SPC N. To believe that the appellant "may have felt that he was under investigation" would be "pure speculation," according to SGT Howard. Evidence was offered to show that an Army Regulation (AR) 15–6 investigation[1] was, in fact, subsequently conducted against the appellant based on SPC N's allegations.[2]

■ The test for legal sufficiency of the evidence is whether, considering the evidence in the light most favorable to the government, the trier of fact could rationally find the existence of every element of the offenses beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Blocker*, 32 M.J. 281, 284 (C.M.A.1991). The test for factual sufficiency is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, this Court is itself convinced of the appellant's guilt beyond a reasonable doubt. UCMJ art. 66(c); *Unit-*

1. Army Reg. 15–6, Boards, Commissions, and Committees: Procedure for Investigating Officers and Boards of Officers (11 June 1988).

2. It is only through the allied papers in the record of trial that we are able to determine when the investigation occurred. The investigating officer was not appointed by the DISCOM commander until 21 May 1991, seven weeks

after the appellant tried to apologize to SPC N. That investigation contains SPC N's original statement written the day before the appellant's attempted apology. However, the last paragraph in the statement summarizes the appellant's effort to apologize to SPC N on 4 April 1991, and her decision to reject it.

ed States v. Turner, 25 M.J. 324 (C.M.A. 1987).

■ An element of proof of obstruction of justice is that the appellant had reason to believe there were or would be criminal proceedings pending against him when he approached SPC N on 4 April 1991.[3] The government did not present any direct evidence on this element. The trial counsel's own argument on findings recognized the weakness of his circumstantial evidence on what the appellant knew about any criminal proceeding, when he stated, "it is not unreasonable to assume that the accused knew or had reason to know that these types of activity ... could in fact lead to criminal charges." We will not assume what the government failed to offer into evidence. We find that the appellant did not know and had no reason to believe that a criminal proceeding had commenced against him at the time he approached SPC N. Applying the standard of Turner, we hold that the evidence is not factually sufficient to prove the appellant's guilt of obstruction of justice beyond a reasonable doubt.

■ The facts surrounding the second assignment of error concern the appellant's indecent language towards SPC B between September 1989 and September 1990. The appellant contends that the government failed to prove that these words were indecent. Specialist B testified that she worked for the 3d Forward Area Support Coordinator (FASCO), which required her to go to the DISCOM communications section to get parts. At various times when SPC B went there, the appellant would tell her that if she gave him a chance, he could "make [her] eyes roll in the back of [her] head and [her] toes curl under." She thought the words were sexual in nature. Specialist B also thought the appellant was kidding most of the time, but every once in a while it appeared to her that he meant it. Each time SPC B would ignore his comments, do what business she had to do, and return to her place of duty with the FASCO. Specialist B never reported the appellant to anyone for saying these comments

to her until she was contacted and asked to do so by the AR 15–6 investigating officer appointed to investigate SPC N's complaint. The appellant admitted that he may have made these comments to SPC B, and if he did, it was usually in the context of a joke.

■ The test to determine whether certain language is indecent or obscene is "whether the particular language is calculated to corrupt morals or excite libidinous thoughts." United States v. French, 31 M.J. 57, 60 (C.M.A.1990). In French, the Court of Military Appeals held that an accused who asked his stepdaughter, a fifteen-year-old girl, "if he could climb into bed with her," as a whole, certainly conveys an indecent message and that, at a minimum, such language reasonably could have been construed as alleging soliciting illicit sexual activity. Id. at 60.

■ We must look to the "plain and ordinary meaning of the words themselves, taking into account all commonly accepted variables of interpretation thereof, for the gravamen of the offense is the indecency of the communication itself, and not the subjective motivation of the accused." United States v. Wainwright, 42 C.M.R. 997, 1000 (A.F.C.M.R.), aff'd on other grounds, 20 U.S.C.M.A. 183, 43 C.M.R. 23 (1970). "The ingredient of indecency, ... may indeed be communicated by implication or innuendo as well as expressed declaration." Id. at 1000. The alleged offensive words need not be indecent or obscene per se, for even "chaste words may be made the medium of expressing obscene thoughts." Id. at 999. We find that the appellant's remarks to SPC B were sexual in nature and were calculated by implication to excite libidinous thoughts. Applying the standards of Jackson and Turner, we are convinced that the evidence is legally and factually sufficient to prove the appellant's guilt of communicating indecent language to SPC B.

We have examined the remaining assignments of error and hold that none warrant relief.

---

3. Manual for Courts–Martial, United States, 1984, Part IV, para. 96b(2).

The finding of guilty of Specification 4 of Charge I is set aside and that specification is dismissed. The remaining findings of guilty are affirmed. Reassessing the sentence based on the error noted and the entire record, and applying the criteria of *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986), the sentence is affirmed.

Senior Judge CREAN and Judge DELL'ORTO concur.