UNITED STATES, Appellee

v.

Ricky C. HULLETT, Sergeant First
Class, U.S. Army, Appellant.

No. 93–0792.
CMR No. 9101803.

U.S. Court of Military Appeals.

Argued March 24, 1994.

Decided Sept. 15, 1994.

For Appellant: *Captain Blair M. Jacobs* (argued); *Lieutenant Colonel James H. Weise, Major Robin L. Hall, Cpatain Michael Huber* (on brief); *Colonel Stephen D. Smith.*

For Appellee: *Captain Glenn L. Kirschner* (argued); *Colonel Dayton M. Cramer, Major Joseph C. Swetnam, Major James L. Pohl* (on brief).

## Opinion

GIERKE, Judge.

A special court-martial composed of officer and enlisted members convicted appellant, contrary to his pleas, of committing an indecent act; communicating indecent language (2 specifications); and obstructing justice, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. The approved sentence provides for a bad-conduct discharge and reduction to the lowest enlisted grade. The Court of Military Review set aside the conviction of obstructing justice, affirmed the remaining findings of guilty, and reassessed and affirmed the sentence. 36 MJ 938 (1993). This Court granted review of the following issue:

> WHETHER THE EVIDENCE IS INSUFFICIENT TO CONVICT APPELLANT OF COMMUNICATING INDECENT LANGUAGE (THE SPECIFICATION OF THE ADDITIONAL CHARGE).[1]

Appellant, a married man, was the noncommissioned officer in charge of the Division Support Command communications sec-tion. In connection with her duties, Specialist B, an unmarried female soldier, was required to obtain parts from the communications section several times a week. Specialist B and appellant regularly engaged in conversation during her visits to the communications section. Asked to describe the nature of her conversations with appellant, she testified, "It depended. Sometimes we'd talk about work; sometimes personal business, personal things." On one occasion appellant assisted Specialist B in arranging for a headstone after her father's death. On that occasion appellant told Specialist B that "he was the only one who cared about [her] here at Fort Campbell." Appellant testified that on another occasion Specialist B talked to him about another sergeant who she thought was sexually harassing her. They also talked on at least one occasion about a man whom Specialist B was dating.

The language at issue is a comment by appellant to Specialist B to the effect that "[i]f I gave him a chance, he'd make my eyes roll in the back of my head and my toes curl under." Appellant made the comment "a couple of times." One of those times was while appellant and Specialist B were discussing a man whom Specialist B was dating. Asked if she thought appellant was serious, Specialist B testified that "he was kidding a lot of the time, most of the time, but every once in a while it would sound like he meant it." Specialist B regarded the comment as "sexual in nature" but did not object to it and did not report it until several months later when she was approached by an investigating officer who was inquiring into complaints about appellant by another female soldier.

Appellant testified that the comment was a joke, frequently repeated among the members of the communications section. He could not recall if he made the comment to Specialist B.

The fact that sexual banter and bragging were common among both male and female soldiers in the communications section was well established at trial. Captain Campbell,

1. We heard oral argument in this case at the United States Military Academy, West Point, New York, on March 24, 1994, as part of "Pro-ject Outreach." *See United States v. Frazier,* 34 MJ 194, 195 n. 1 (CMA 1992).

the officer in charge of the communications section and appellant's supervisor, testified that sexual joking and banter were "nothing unusual" in the section. Specialist N, another female soldier in the communications section who was also an alleged victim of appellant's language, testified that the comment made to Specialist B was frequently used by appellant while joking among members of the communications section. Specialist N described it as bragging.

Both female and male soldiers participated in the sexual joking and bantering. Specialist B admitted that she sometimes took part in the joking and bantering. On one occasion Specialist N and Specialist P, both female members of the communications section, sent appellant a sexually explicit letter as a joke. Specialist N previously had asked appellant if he would object to fellatio by a woman who had never done it before. Specialist N also surveyed the male soldiers in the unit, asking them, "[W]hat would you do if oral sex was given to you by somebody who had never done it before?"

When the legal sufficiency of the evidence supporting a conviction is challenged on appeal, the standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

The elements of the offense of communicating indecent language are:

(1) That the accused orally or in writing communicated to another person certain language;

(2) That such language was indecent; and

(3) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

Para. 89b, Part IV, Manual for Courts–Martial, United States, 1984.

Indecent language is defined as "that which is grossly offensive to modesty, decency, or propriety, or shocks the moral sense, because of its vulgar, filthy, or disgusting nature, or its tendency to incite lustful thought." Para. 89c. In the context of examining the sufficiency of a specification, this Court has recognized that whether language is indecent depends on a number of factors, including but not limited to "fluctuating community standards of morals and manners, the personal relationship existing between a given speaker and his auditor, motive, intent and the probable effect of the communication...." *United States v. Linyear*, 3 MJ 1027, 1030 (NCMR 1977), *pet. denied*, 5 MJ 269 (CMA 1978), *cited with approval* in *United States v. French*, 31 MJ 57, 60 (CMA 1990). The test for determining whether language is indecent is "whether the particular language is calculated to corrupt morals or excite libidinous thoughts." 3 MJ at 1030, *adopted* 31 MJ at 60.

 Two separate elements of the offense are at issue in this case. The first is the element of indecency. Language is not indecent unless it violates community standards. 31 MJ at 60. We agree with the Army Court of Military Review that the applicable "community standards" for measuring whether language is indecent are those of the military community, not those of an individual military unit. *United States v. Dyer*, 22 MJ 578, 581–83 (1986). We also agree with that court's observation that "[c]oarse language among soldiers, male or female, does not *per se* constitute a violation of Article 134." *United States v. Prince*, 14 MJ 654, 656 (ACMR 1982), *pet. denied*, 16 MJ 102 (1983).

 Language which is on its face innocuous may be indecent if the context in which the language is used sends an indecent message, *e.g.*, soliciting incest. *See United States v. French*, *supra* stepfather asking 15–year–old stepdaughter "if he could climb into bed with her" is indecent). An act of heterosexual intercourse between consenting adults is not intrinsically indecent. *See United States v. Snyder*, 1 USCMA 423, 427, 4 CMR 15, 19 (1952) (fornication not an offense in "absence of aggravating circumstances"). It is not a *per se* viola-

tion of the military community's standards of decency for an adult male to suggest to an adult female that they have a sexual relationship. Of course, such a suggestion may be rendered indecent by the nature of the sexual act suggested or the "vulgar, filthy, or disgusting" manner by which it is suggested. Para. 89c, Part IV.

■ If one of the consenting adults is married to someone else, the adulterous nature of the sexual intercourse does not make the act of intercourse "indecent," although it may make it illegal. *Compare* para. 62, Part IV, *with* para. 90, Part IV, Manual, *supra. See United States v. Blake*, 33 MJ 923, 926 n. 3 (ACMR 1991) (adultery does not include element of indecency). *See also United States v. Clarke*, 25 MJ 631, 634 (ACMR 1987) (" 'indecency' ... must be based on nature of the act, not the relationship of the parties' "), *aff'd on other grounds*, 27 MJ 361 (CMA 1989).

■ The second element is the statutory requirement that the conduct operate "to the prejudice of good order and discipline" or be "of a nature to bring discredit upon the armed forces." Article 134; para. 89b, Part IV. While circumstances in an individual unit do not determine the applicable community standards, they are relevant to the determination whether the language is prejudicial to good order and discipline. The fact that appellant was a senior noncommissioned officer is relevant to this element. The fact that appellant was married might be relevant to this element if the language, even though innocuous on its face, conveyed a suggestion that Specialist B participate in an adulterous act.

■ Applying the foregoing principles to the facts of this case, we hold that the evidence is insufficient as a matter of law to sustain appellant's conviction of communicating indecent language to Specialist B. With respect to the element of indecency, the Government conceded that the words themselves were innocuous. Thus, appellant's language had to convey an indecent message in order to support the conviction. There is no evidence that the language was calculated to offend, shock, or titillate, much less is there any evidence that anyone, including Specialist B, was offended, shocked, or titillated by it.

The remark in question was a common joke, used to brag about sexual prowess. All of the evidence indicates that appellant and Specialist B had a friendly, unofficial relationship, separate from their duty relationship. The remark occurred during casual, unofficial conversation. On at least one occasion, it was made as Specialist B was describing a man whom she was dating. Appellant and Specialist B regularly talked about personal matters, which would explain why appellant's sexual bragging was not offensive to Specialist B.

Specialist B testified that appellant usually was joking, "but every once in a while it would sound like he meant it." What appellant meant, even if he was serious, is unclear. Whether he merely meant to brag about his sexual prowess or to express a desire for a sexual relationship with Specialist B is also unclear. An expression of desire for sexual intercourse still falls short of a request for sexual intercourse. *Cf. United States v. Asfeld*, 30 MJ 917, 924 (ACMR 1990) (comments during an obscene phone call by married male accused like, "I want to f—k you," although indecent, were not a request for sexual intercourse but were "nothing more than declarations of a lustful desire"). Nevertheless, even construing the language in the light most favorable to the prosecution and assuming *arguendo* that it was a request for sexual intercourse, it still falls short of being indecent language. *See United States v. Blake* and *United States v. Clarke*, both *supra*. In sum, there is no evidence that the remark was "calculated to corrupt morals or excite libidinous thoughts."

Likewise, there is no evidence to support the statutory requirement that the conduct be prejudicial to good order and discipline or service discrediting. Since the language in question was privately communicated on a military installation between two consenting military members, there is no possibility of discrediting the armed forces.

Given the circumstances under which the remarks were made and the conditions in the unit, the evidence does not support a finding that good order and discipline were prejudiced. Male and female soldiers of all ranks, including Specialist B, the alleged victim, willingly participated in the sexual bantering and joking. The remark in question was a common joke. Specialist B was not a member of appellant's unit. The remarks occurred during casual, unofficial conversation. There is no evidence that appellant was abusing his position of authority.

While appellant's comments may have been in poor taste, we do not believe that, under the particular facts of this case, his conduct rises to the level of criminal activity as a matter of law. *See United States v. Hanson,* 30 MJ 1198, 1201 (AFCMR 1990) ("A certain amount of banter and even profanity in a military office is normally acceptable and, even when done in 'poor taste,' will only rarely rise to the level of criminal misconduct."), *aff'd,* 32 MJ 309 (CMA 1991) (summary disposition). We hold that, even viewed in the light most favorable to the prosecution, the evidence fails to establish that the comment was grossly offensive, libidinous, and service discrediting or prejudicial to good order and discipline.[2]

We conclude that this error is prejudicial as to sentence.

The decision of the United States Army Court of Military Review as to the Additional Charge and its specification and the sentence is reversed. The findings of guilty thereon and the sentence are set aside. The Additional Charge and its specification are dismissed. The record of trial is returned to the Judge Advocate General of the Army. A rehearing on sentence may be ordered.

Judge COX concurs.

2. Our opinion is limited to the sufficiency of the evidence in this case to support a conviction of communicating indecent language, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. We do not intend to preclude the possibility that, under appropriate circumstances, sexually-oriented comments by a senior noncommissioned officer to a soldier junior in

WISS, Judge (concurring in the result):

I cannot join the lead opinion. Early in its legal commentary, the Opinion agrees with the Court of Military Review "that the applicable 'community standards' for measuring whether language is indecent are those of the military community, not those of an individual military unit" like the communications section of the Division Support Command. 40 MJ at 191. I am unsure, however, that the Opinion then actually applies those standards.

I have little doubt that an incident under virtually these same circumstances but occurring in any of the overwhelming number of other offices in the military surely would pass the standard of a legally sufficient evidentiary basis for conviction. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). As appellant argues and as the Opinion agrees, words cannot be judged in a vacuum without regard for the context in which they were uttered or the surroundings in which the parties found themselves. That, however, normally is a jury question which, when answered adversely to an accused, rarely would offer a basis for an appellate court to find the answer was wrong as a matter of law. The fact that the Opinion concludes that the standard of *Jackson v. Virginia, supra,* is not met here speaks volumes concerning what community's standards actually are being used by the Opinion as its guideposts.

Nonetheless, I join the Opinion in reversing appellant's conviction of communicating indecent language to Specialist B. The Opinion reflects—but does not exhaust—the evidence of record that conclusively establishes the unusually casual atmosphere existing in this communications section and the commonality of unusually sexually explicit banter among all who worked or frequently visited that section on business, much of which by

rank or position might constitute a criminal offense, *e.g.,* a violation of Article 93, UCMJ, 10 USC § 893. Likewise, we need not address whether the same comments made by an officer might violate Article 133, UCMJ, 10 USC § 933. *See, e.g., United States v. Moore,* 38 MJ 490 (CMA 1994).

most measures could reasonably be judged adequate to "excite libidinous thoughts." *See United States v. French*, 31 MJ 57, 60 (CMA 1990). Indeed, as the Opinion points out, even the officer-in-charge of that section, who was appellant's supervisor, testified that sexually explicit joking and banter were "nothing unusual" in that section. There is no hint in the record that Captain Campbell or any other officer in that command did anything at all to convey to those working in that section that such comportment was not acceptable.

Under these circumstances, I conclude that appellant had no reasonable notice that the oral language in issue here—which did not differ from the genre of language that not only was commonplace in that section but also was tolerated by those in command—was criminal. *See United States v. Johanns*, 20 MJ 155 (CMA), *cert. denied*, 474 U.S. 850, 106 S.Ct. 147, 88 L.Ed.2d 122 (1985). *See also Parker v. Levy*, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974); *Gooding v. Wilson*, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972). *Cf. Winters v. New York*, 333 U.S. 507, 68 S.Ct. 665, 92 L.Ed. 840 (1948); *Lanzetta v. New Jersey*, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939). As appellant argued in his brief, "The crude banter often heard in line units may be inappropriate for the chapel or the general's office, but it is hardly a fit basis for a court-martial charge under the circumstances at issue here." Final Brief at 5. As applied to this case, appellant reasonably may have been on notice that his language may be inappropriate for the chapel or the general's office, but the record is quite clear that he had no notice at all that it was inappropriate for the communications section. Absent that notice, his conviction is unconstitutional as violating due process. *United States v. Johanns, supra* at 160–61.

SULLIVAN, Chief Judge, joined by CRAWFORD, Judge (dissenting):

It was well established in this case that appellant was a married man and the non-commissioned officer in charge of the communications section of Division Support Command. It was also well established that Specialist B was an unmarried female soldier, junior to appellant, who was required to obtain parts from the communication section several times a week. During those visits and on several occasions over a period of weeks, appellant said to Private B "[i]f I gave him a chance, he'd make my eyes roll in the back of my head and my toes curl under."

Based on its review of competent evidence in this case, the Court of Military Review found "that the appellant's remarks to Specialist B were sexual in nature and were calculated by implication to excite libidinous thoughts." 36 MJ 938, 940 (1993). *See also United States v. Choate*, 32 MJ 423, 426 (CMA 1991); *United States v. French*, 31 MJ 57 (CMA 1990). In addition, the members of this court-martial were more than capable of discerning whether appellant's message was indecent and determining whether such a communication was a service disorder in light of the circumstances surrounding its making. *See United States v. Frazier*, 34 MJ 194 (CMA 1992); *United States v. Guerrero*, 33 MJ 295 (CMA 1991). I would not deprive the members of this court-martial of their power and responsibility to make these judgments. *See also United States v. Moore*, 38 MJ 490 (CMA 1994); *see generally Parker v. Levy*, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974).

Justice Holmes once said that "the character of every act depends upon the circumstances in which it is done. The most stringent protection of free speech would not protect a man in falsely shouting fire in a theater and causing a panic." *Schenck v. United States*, 249 U.S. 47, 52, 39 S.Ct. 247, 249, 63 L.Ed. 470 (1919) (citation omitted). Here, a competent jury of his peers found that the above-quoted words spoken by a married senior noncommissioned officer (NCO) to a young junior soldier in the performance of her duties during work hours at the workplace of the senior NCO were of an indecent nature. I cannot disagree with their finding and that of the court below. In today's Army, no junior soldier should have to put up with such remarks and appellant

should not be excused from the consequences of his remark because, as the lead opinion puts it, "The remark in question was a common joke." 40 MJ at 193. I would affirm.