UNITED STATES, Appellee,

v.

Wesley J. COLEMAN, Jr., Sergeant,
U.S. Army, Appellant.

No. 97–0727.
Crim.App. No. 9501241.

U.S. Court of Appeals for
the Armed Forces.

Argued March 26, 1998.

Decided Sept. 1, 1998.

For Appellant: *Captain Jodi E. Terwilliger–Stacey* (argued); *Colonel John T. Phelps, II, Lieutenant Colonel Michael L. Walters,* and *Major Holly S.G. Coffey* (on brief); *Major Michael E. Hatch* and *Captain Norman R. Zamboni.*

For Appellee: *Captain Arthur J. Coulter* (argued); *Colonel Joseph E. Ross, Lieutenant Colonel Frederic L. Borch, III*, and *Captain Chris A. Wendelbo* (on brief); *Lieutenant Colonel Eva M. Novak.*

## Opinion of the Court

GIERKE, Judge:

A general court-martial composed of officer and enlisted members convicted appellant, contrary to his pleas, of two specifications of maltreatment of a subordinate, two specifications of assault and battery, one specification of indecent assault, and three specifications of communicating indecent language, in violation of Articles 93, 128, and 134, Uniform Code of Military Justice, 10 USC §§ 893, 928, and 934, respectively. He was acquitted of one specification of maltreatment and 5 of the 10 specifications under Article 134.

The Court of Criminal Appeals dismissed the specifications of maltreatment as multiplicious with the assaults and indecent language, and affirmed the remaining findings of guilty and the sentence.[1] The court below relied on this Court's decisions in *United States v. Weymouth*, 43 MJ 329 (1995), and *United States v. Foster*, 40 MJ 140 (1994), to support its holding that the maltreatment offenses were multiplicious. In addition, the court below stated: "Additionally, even if current case law were to be viewed differently on this issue, we find that, as charged, appellant stands convicted of an unreasonable multiplication of charges." Unpub. op. at 2; *see Foster, supra* at 144 n. 4 (warning against efforts to "pile on" charges). The Government has not challenged this holding before our Court.

We granted review of the following issue:

WHETHER THE EVIDENCE WAS LEGALLY SUFFICIENT TO SUPPORT A FINDING OF GUILTY TO COMMUNI-CATING INDECENT LANGUAGE (SPECIFICATION 10 OF CHARGE III).

For the reasons set out below, we hold that the evidence was not legally sufficient.

## Facts

Appellant's nine offenses involved three women, a civilian and two enlisted subordinates. Four offenses involved Private First Class (PFC) R. The granted issue involves only specification 10 of Charge III, alleging that appellant communicated indecent language to PFC R on December 15, 1994.

PFC R testified that she reported to Fort Sill, Oklahoma, in September 1994, after completing Advanced Individual Training. She was introduced to appellant as she was being acquainted with her new duty station. On one occasion shortly after PFC R's arrival, appellant walked with her to her car after physical training, leaned in through the car window, and kissed her on the lips. Later the same day he kissed her again in the "Coke room" and "asked [her] out." PFC R declined because appellant was married. In early November 1994, PFC R began receiving telephone calls from appellant at her duty station, telling her that he wanted to have sex with her. PFC R testified that she "was more or less stunned, so [she] just didn't say anything back to him." She testified that on three occasions appellant came into the office and grabbed her buttocks. Appellant asked her out again, and she declined, telling appellant that she was seeing another soldier "pretty seriously." She testified that appellant responded, "Well, we won't get caught," but she declined, saying that she did not date married men.

PFC R testified that appellant left her alone "for a while," but in early December appellant again began calling her, telling her how sexy she was and how much he wanted to have sex with her. Again, she did not know what to say and so she did not respond.

---

1. The Court of Criminal Appeals incorrectly recited that appellant was convicted of 3 specifications of assault and neglected to mention that he was convicted of indecent assault. However, nothing in that court's opinion indicates an intent to set aside the conviction of indecent assault. To the contrary, the court stated that, except for the convictions of maltreatment, "[t]he remaining findings of guilty are affirmed." Accordingly, we construe the opinion of the court below to affirm all findings of guilty except the maltreatment offenses.

On one occasion he stood in the doorway to the office and told PFC R he wanted to expose himself to her. She responded that she did not want to see him.

PFC R testified that on December 14, 1994, the following occurred:

I was sitting there typing on my computer and I felt something up by my ear, and as I turned around he kissed me on the ear and then he knelt down beside me. He said, he asked me, he said, "I really want to ask one of your friends out. How do you feel about that?" I said that it was his own life. I can't choose who he wants to date. And then he specified who it was, and it was my best friend, [AW], and I said she was getting married that very day. Well, she wasn't getting married that day, but she was getting married the next day, and I told him that, that she was getting married the next day. And, he said, "Well, that is too bad. I wish we could take a long weekend together, just the three of us, so that we could, you know, have fun together", you know. He thought that we would kill him and he said—wait a minute. I am getting the two days mixed up.

(Emphasis added.)

PFC R then clarified the events of the two days, December 14 and 15, as follows:

On the 14th I did not know who he was talking about. He—I said he could see whoever he wants to see, and he said, "But I don't want to see anybody else. I want you." He said, "I want that," and he pointed towards my vaginal area, and then he took his hand away and put it—he said, "I want that." And at that time he touched me physically in my vaginal area. I grabbed his hand and I pushed it away. He stood up. He said a few things and I didn't know what he said. I don't remember what he said and he walked out of the office, because I was so stunned. It took me a while to get my senses back to finish what I was doing for Chief.

With respect to the events of December 15, PFC R testified:

I was sitting at my desk again, and *he was asking about taking out my friend again, and I was like, and then he specified who*

*it was.* He called her "the blondie girl," and I said, "Well, she is getting married, you know, this very day, so that is out of the question." *And he said, "Well, that is too bad. I really wanted to take both of you, like, on a long weekend. Both of you would kill me."*

(Emphasis added.)

### Discussion

█ Based on PFC R's testimony, the court-martial convicted appellant of maltreatment of a subordinate (specification 2 of Charge I), indecent assault by fondling her vaginal area (specification 3 of Charge III), communicating indecent language on December 14 (specification 9 of Charge III), and communicating indecent language on December 15 (specification 10 of Charge III). The granted issue concerns only specification 10 of Charge III. Appellant's conviction was based on PFC R's testimony that appellant said, "I really wanted to take both of you, like, on a long weekend. Both of you would kill me." Appellant did not testify.

Appellant contends that the language "is neutral and innocuous and does not constitute per se indecent language." He argues that the language means only that he would enjoy being in the company of PFC R and her friend, and that it does not suggest a *ménage à trois* or any kind of sexual liaison. The Government asserts that appellant's underlying message was to suggest a *ménage à trois* and, as such, was indecent.

The elements of communicating indecent language are:

(1) That the accused orally or in writing communicated to another person certain language;

(2) That such language was indecent; and

(3) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

Para. 89b, Part IV, Manual for Courts-Martial, United States (1995 ed.).

The Manual for Courts-Martial defines "indecent language" as "that which is grossly

offensive to modesty, decency, or propriety, or shocks the moral sense, because of its vulgar, filthy, or disgusting nature, or its tendency to incite lustful thought." Para. 89c, Part IV.[2]

██ Words which are innocuous in themselves may be indecent if the context in which they are used sends an indecent message, *e.g.*, suggesting incest. *United States v. Hullett*, 40 MJ 189, 191 (CMA 1994). Words suggesting heterosexual intercourse between consenting adults are not intrinsically indecent. *Id.* Words suggesting sexual intercourse which would be adulterous are not intrinsically "indecent," even though the intercourse would be illegal. *Id.* at 192, citing *United States v. Clarke*, 25 MJ 631, 634 (ACMR 1987) (" 'indecency' ... must be based on the nature of the act, not the relationship of the parties"). An expression of desire for sexual intercourse falls short of a request for sexual intercourse. *Hullett*, 40 MJ at 192.

██ Because the issue before us is the legal sufficiency of the evidence, our standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Because the only issue in this case is whether the language was "indecent," the specific issue is whether any rational trier of fact could have found, under the particular facts of this case, that appellant's words were indecent when he responded to PFC R's statement that her friend was getting married by saying, "Well, that is too bad. I really wanted to take both of you, like, on a long weekend. Both of you would kill me."

We hold that the evidence is legally insufficient. Giving the Government the benefit of every inference, we agree that appellant's comments reflected a desire for sexual intercourse with PFC R, as well as her friend, "the blondie girl." Nevertheless, the most that a rational factfinder could conclude is that appellant was expressing his desire for sexual intercourse, telling PFC R that he found both her and her friend sexually attractive, and telling PFC R that he was disappointed that her friend was no longer available. There is nothing in appellant's words or the context supporting the Government's theory that appellant asked PFC R to participate in a *ménage à trois*. Appellant's comments were in poor taste, grossly inappropriate because of his married status and military rank, and sufficient to constitute maltreatment of a subordinate, but we hold that they were not indecent as that term is defined in the Manual for Courts–Martial or the decisions of this Court. *Hullett, supra* at 193.[3]

██ We are satisfied, however, that appellant was not prejudiced with respect to sentence, because the military judge treated specification 10 of Charge III as multiplicious with other offenses of which appellant was lawfully convicted. Accordingly, no sentence relief is warranted.

*Decision*

The decision of the United States Army Court of Criminal Appeals is reversed with respect to specification 10 of Charge III. The finding of guilty of specification 10 of Charge III is set aside and that specification is dismissed. In all other respects the decision of the court below is affirmed.

Chief Judge COX and Judge EFFRON concur.

2. This language is unchanged from the version of the Manual for Courts–Martial, United States, 1984, which was in effect at the time of appellant's offenses.

3. With all respect for Judge Crawford, we must reject her assertion that appellant's track record of maltreatment and sexual harassment was sufficient to make the comment in question indecent. The Court of Criminal Appeals appropriately characterized the numerous offenses of which he was convicted as "systematic sexual harassment of female soldiers subordinate in rank to him by making sexual comments to them and by fondling them." Unpub. op. at 2. There is no doubt that the words alleged in specification 10 of Charge III were intended to convey a sexual message. The only issue is whether the Government produced sufficient evidence to show that the message was indecent. We hold that it did not.

SULLIVAN, Judge (dissenting):

In my view, the evidence in this case was legally sufficient to support appellant's conviction for communicating indecent language. *See United States v. Hullett*, 40 MJ 189, 194 (CMA 1994)(Sullivan, C.J., joined by Crawford, J., dissenting). The evidence as delineated in Judge Crawford's dissenting opinion in this case unquestionably permits appellant's conviction for this offense.

I neither understand nor agree with the majority's decision to the contrary.

CRAWFORD, Judge (dissenting):

Appellant, a noncommissioned officer (NCO), told Private First Class (PFC) R, who was on her first assignment, "I really wanted to take both of you, like, on a long weekend. Both of you [referring to PFC R and Private (PVT) M] would kill me."

One must consider this statement in context. Appellant was not referring to a computer training course or a visit to a restaurant. He was expressing his desire to have sexual intercourse with both women. Even if one does not believe this statement was meant to suggest a *ménage à trois*, it was, at a minimum, conduct prejudicial to good order and discipline under Article 134, Uniform Code of Military Justice, 10 USC § 934, and this Court should affirm appellant's conviction as a closely-related offense. *United States v. Brown*, 45 MJ 389 (1996) (four judges affirmed appellant's conviction under Article 134 and agreed that appellant's conduct was prejudicial to good order and discipline, although only two judges agreed appellant engaged in union activity); *United States v. Epps*, 25 MJ 319 (CMA 1987).

Appellant was using "first termers," soldiers on their first assignment after boot camp, and fellow employees at the Pizza Hut as his own private harem. Appellant was charged with 14 specifications involving sexual activities with 7 different women. Twelve of the specifications involved "first termers."

The evidence relating to appellant's activities with these women is relevant to the specification at issue. As this Court and the Supreme Court have indicated, surrounding circumstances should be considered when determining the connotation of language. *Cf. Dowling v. United States*, 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990); *United States v. Cuellar*, 27 MJ 50 (CMA 1988).

The surrounding circumstances here reveal that appellant's victims were targets of opportunity, his co-workers. He systematically took advantage of their inexperience and lower rank.

PVT H, an 18–year–old supply clerk, testified that appellant called her and asked her for paper, highlighters, and paper clips. He then appeared at the supply office where she worked. As they went to check on the supplies, appellant picked her up, pinned her against a bookcase, and forcibly kissed her. PVT H had never met appellant before this incident.

Appellant was PFC W's first supervisor at her first duty station. She testified that they were in the office working when she turned around and saw appellant with his pants open, flashing his penis.

One must also consider appellant's actions toward 16–year–old Miss G. Miss G testified that, against her wishes, appellant lifted her over his shoulder and then patted her on the buttocks. Further, in front of Sergeant G and Staff Sergeant K, appellant made sexual motions, opened up his pants, and grabbed his crotch while saying, "It's not underwear that matters; it is this that counts."

Appellant mistreated PFC R, the victim of the specification in issue, over a long period of time. When she first met appellant, she admitted that she kissed him a couple of times. However, when she found out he was married, she ended the relationship. Appellant was apparently not pleased with her decision. He called her at work and at home repeatedly, showed up at her office, exposed himself to her, and engaged in inappropriate language and other inappropriate conduct. For example, appellant pointed at PFC R's vaginal area and said, "I want that. I want that." He touched her buttocks. He kissed her. He fondled her vaginal area. And then, appellant told PFC R that he wanted to take a trip with her and PVT M, and that the two of them "would kill" him.

When this language is considered in context, along with appellant's other statements and conduct, there is no innocent connotation that may be drawn from it.

Paragraph 89(b), Manual for Courts-Martial, United States (1995 ed.), sets forth the following elements for the indecent-language offense:

(1) That the accused orally or in writing communicated to another person certain language;

(2) That such language was indecent; and

(3) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

In this case, we are only concerned with the second element of the offense: whether appellant's communicated language was indecent.

The Explanation section defines indecent language as "that which is grossly offensive to modesty, decency, or propriety, or shocks the moral sense, because of its vulgar, filthy, or disgusting nature, or its tendency to incite lustful thought. The language must violate community standards." Para. 89(c), Part IV.

The standard for determining the legal sufficiency of evidence supporting findings of guilty at courts-martial is well established. Judge Cox, writing in *United States v. Harper,* 22 MJ 157, 161 (CMA 1986), stated, "[I]n this context, sufficient evidence generally means some legal and competent evidence from which a court-martial may find or infer beyond a reasonable doubt those facts required by law for conviction."

*United States v. Pritchett,* 31 MJ 213, 216 (CMA 1990) (footnote omitted). The test for legal sufficiency of the evidence "is whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Turner,* 25 MJ 324 (CMA 1987).

I agree with the Court of Criminal Appeals that appellant "engaged in systematic sexual harassment of female soldiers subordinate in rank to him [including PFC R] by making sexual comments to them and by fondling them." Unpub. op. at 2. Considering the totality of the circumstances and viewing the evidence in the light most favorable to the Government, I believe the evidence supports the members' finding that appellant's language was indecent.

In the alternative, this Court should affirm appellant's conviction of an Article 134 offense because appellant's conduct was prejudicial to good order and discipline. Appellant was a married NCO who made an extremely inappropriate sexual remark to a subordinate. This is not acceptable workplace behavior, either in the military or in a civilian setting. Thus, appellant's actions were to the prejudice of good order and discipline.