*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
HITESMAN, GASTON, and GERRITY
Appellate Military Judges

_____

**UNITED STATES**
Appellee

**v.**

**Michael S. PERKINS**
Aviation Electrician's Mate Second Class (E-5), U.S. Navy
Appellant

**No. 201900135**

Decided: 17 April 2020

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Hayes C. Larsen

Sentence adjudged 24 January 2019 by a general court-martial convened at Naval Station, Norfolk, Virginia, consisting of a military judge sitting alone. Sentence approved by the convening authority: reduction to E-1, confinement for 120 days, and a bad-conduct discharge.

For Appellant:
*Captain Scott F. Hallauer, JAGC, USN*

For Appellee:
*Lieutenant Timothy C. ~~Cedar~~Ceder, JAGC, USN*
*Lieutenant Joshua C. Fiveson, JAGC, USN*

Judge GERRITY delivered the opinion of the Court, in which Senior Judge HITESMAN and Judge GASTON joined.

*Counsel name corrected.*

_____

**This opinion does not serve as binding precedent, but
may be cited as persuasive authority under
NMCCA Rule of Appellate Procedure 30.2.**

_____

GERRITY, Judge:

Appellant was convicted in accordance with his pleas, of one specification of indecent language, in violation of Article 134, Uniform Code of Military Justice [UCMJ], 10 U.S.C. § 934 (2016), for communicating indecent language to a fictitious 14-year-old named "Cassie," who was an online persona portrayed by Special Agent JS of the Air Force Office of Special Investigations.

Appellant did not initially assert a specific assignment of error on appeal. Following our preliminary review, this Court specified the following issues:

I. ***Did the Military Judge err in accepting a plea for indecent language when Appellant's factual and legal basis for the language being indecent was Appellant's mistaken belief that he was communicating with a 14- year-old when he was in fact communicating with an adult undercover agent?***

II. ***If the plea to indecent language was not provident, was the plea provident to the lesser included offense of attempted indecent language?***

We answer the first specified issue in the negative, mooting the second, and affirm the findings and sentence. [1]

## I. BACKGROUND

Special Agent JS set up a fictitious online persona named "cassiesoccergirl12" and posted an ad on an internet website. Appellant responded to the ad, and a series of internet-based message exchanges on another messaging

_____

[1] The assignments of error arise, in part, from the military judge's statements concerning Appellant's responses during providency about the subjective belief that the language would only be indecent if it was communicated to a 14-year-old. Record at 42-43.

application ensued between 29 November 2017 and 1 December 2017, in which Special Agent JS identified herself as Cassie and communicated that she lived on Langley Air Force Base and her dad was in the military. The Appellant asked how old Cassie was, and Cassie said she was 14. The Appellant sent messages to establish a relationship with Cassie, and then the Appellant initiated increasingly sexually charged messages. Appellant unsuccessfully tried to video chat and to link with Cassie on a different messaging application. He also discussed meeting Cassie in person. The charged indecent language that Appellant communicated was as follows:

    a.  "what's the dirtiest thing you done," or words to that effect;

    b.  "i have a decent amount to show," or words to that effect;

    c.  "Well you can tell me some of your fantasies that will give you an idea haha," or words to that effect;

    d.  "I mean I'm still super horny I play with my self a lot haha," or words to that effect; and

    e.  "me and a friend f[***]ed this guys wife with him watching," or words to that effect"[2]

For context, examples of Appellant's other communications to Cassie between 29 November 2017 and 1 December 2017, which were not included in this indecent language charge Appellant pled guilty to, are:

    a.  "Iv done everything. I'm kinda a hoe. Licked butts and everything else 3 ways I'm mean everything but not gay";

    b.  "I can tell you my favorite thing is anal not many girls like it because it hurts but if you push through the pain it's the best said every girl that does it. I like to lick everything a lot also";

    c.  "Iv never had anything in my butt but every girl that lets me loves it. Like a lot";

    d.  "And since you're a virgin being that tight you're prone to ripping them";

    e.  "Yeah you seem like you're going to be a freak when you're older";

    f.  "Okay haha prolly get you wet though talking about it. Just remember masterbation is key haha";

---

[2] Record at 8 (Charge Sheet).

g.  "you ever send nudes?";

h.  "I wouldn't ask for any except on snap chat so its deleted after seeing so the girl will trust you. I wouldn't send any unless over snapchat to someone I did not trust yet";

i.  "you can send me more pictures if you want. And we can work on what you like haha";

j.  "Gotta remember you are pretty young Cuz I'm pretty perverted";

k.  "Wow. You are cute and look older than your age";

l.  "Oh ok. Start young gotta get good at it. And damn parents haha I can't say to much on here in case they see the message why snap is better so it disappears";

m.  "You can try messing with girls also that's always fun and hot they know what you like since they have the same thing haha";

n.  "Yeah in person is better it may happen";

o.  "So you want me to teach you in person";

p.  "We will have to see. I could get into a lot of trouble";[3]

## II. DISCUSSION

### A. Standard of Review

Prior to accepting a guilty plea, the military judge must ensure the plea is supported by a factual basis. Article 45(a), UCMJ; *United States v. Care*, 40 C.M.R. 247 (C.M.A. 1969); Rule for Courts-Martial [R.C.M.] 910(e). The military judge must elicit sufficient facts to satisfy every element of the offense in question, and the military judge's decision to accept a plea of guilty is reviewed for an abuse of discretion. *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008). Questions of law arising from the guilty plea are reviewed de novo. *Id.*

A military judge abuses his discretion if a ruling is based on an erroneous view of the law or if the military judge fails to obtain an adequate factual basis for the plea—but this factual basis is an area the military judge is afforded significant deference. *United States v. Simpson*, 77 M.J. 279, 282 (C.A.A.F. 2018) (quoting *United States v. Nance*, 67 M.J. 362, 365 (C.A.A.F.

---

[3] Prosecution Exhibits 1-4.

2009)). A reviewing appellate court may only reject a guilty plea if there is a substantial basis in law or fact to question the plea. *Id.* Before finding a plea improvident, this Court "must overcome the generally applied waiver of the factual issue of guilt inherent in voluntary pleas of guilty." *United States v. Dawson*, 50 M.J. 599, 601 (N-M. Ct. Crim. App 1999).

## B. Providence Inquiry

Following an explanation of the elements, including a definition of the term "indecent language," and an examination of Appellant in accordance with R.C.M. 910 and *United States v. Care*, the military judge entered a finding of guilty consistent with Appellant's plea.

To sustain a guilty plea to indecent language, Appellant's charged communication must contain language that has the "tendency to incite lustful thought" or "is grossly offensive to modesty, decency, or propriety, or shocks the moral sense because of its vulgar, filthy, or disgusting nature." *Manual for Courts-Martial, United States* (2016 ed.) [*MCM*], pt. IV, ¶89.c; *see also United States v. Negron*, 60 M.J. 136, 144 (C.A.A.F. 2004). Words that are not per se indecent or words that are false can meet the definition when considered within the context in which they were uttered. *See United States v. Hullett*, 40 M.J. 189, 191 (C.M.A. 1994). Indecency "depends on a number of factors, including but not limited to fluctuating community standards of morals and manners, the personal relationship existing between a given speaker and his auditor, motive, intent and the probable effect of the communication . . . ." *Id.* (citation and internal quotation marks omitted). The relevant "community standard" for measuring indecency is that of the military community as a whole and not of the individual unit. *Id.*

In determining whether the language is indecent it must be evaluated in context, considering all of the surrounding circumstances. *See United States v. Brinson*, 49 M.J. 360, 364 (C.A.A.F. 1998) (rejecting a "per se" test for indecent language in favor of one evaluating the circumstances surrounding the communication). Our review of the circumstances of the communication of Appellant's language is not limited to the exact moment of the communication of the alleged language, rather "we must 'examine the entire record of trial to determine the precise circumstances under which the charged language was communicated.'" *United States v. Green*, 68 M.J. 266, 270 (C.A.A.F. 2010) (quoting *Brinson*, 49 M.J. at 364). We also examine whether the language tends reasonably to corrupt morals or excite libidinous thoughts. *MCM*, pt. IV, ¶89.c; *see generally United States v. French*, 31 M.J. 57, 60 (C.M.A. 1990) (assessing whether charged language was was "calculated" to corrupt morals or excite libidinous thoughts) (citation omitted).

As he agreed under the stipulation of fact and discussed during the providence inquiry, after seeing the ad on the internet, Appellant engaged in a texting conversation with Cassie, whom he believed to be 14 years old based upon a picture of her face she sent to him and her response to his question of how old she was. He acknowledged sending numerous text messages to Cassie that were indecent due to their sexual nature, and the fact that his language was lewd or salacious and had a tendency to incite lustful and libidinous thoughts. He also acknowledged that because of its sexual nature, his language was grossly offensive to the community sense of modesty, decency or propriety, or shocks the moral sense of the community because of its vulgar, filthy or disgusting nature or its tendency to incite lustful thoughts. Appellant further elaborated on the context of the charged statements:

> MJ: So looking at your charge sheet at paragraph (b) where you say "I have a decent amount to show" or words to that effect, what was that in reference to?
>
> ACC: My penis size.
>
> MJ: And then looking at paragraph (c) where you say "well you can tell me some of your fantasies that will give you an idea haha," what was that in reference to?
>
> ACC: Any of her sexual fantasies that she has.
>
> MJ: So this wasn't just some type of fantasies. You were specifically asking or communicating, by implication, sexual fantasies?
>
> ACC: Yes, Your Honor.
>
> MJ: And that would be apparent in the text messages that you had with this undercover agent in the context in which these text messages were being discussed.
>
> ACC: Yes, Your Honor.
>
> MJ: Paragraph (d) it says "I mean I'm still super horny I play with myself a lot haha." Was—what was this in reference to?
>
> ACC: Masturbation. . . .
>
> MJ: And then paragraph (e) says that "me and a friend f[***]ed this guys wife with him watching." What was that in reference to?

    ACC:    An experience that I had.[4]

In accepting the plea, the military judge concluded that "based on the Accused's providency inquiry, based on his subjective belief that he was communicating with someone he believed to be a 14-year-old and the language in which he did communicate, the court does find that, under the definitions and elements under Article 134, that the language is indecent."[5] He explained, "Then that subjective belief, while not necessary in this case, does, in this court's mind, satisfy the court that there is a factual and legal basis for his plea of guilty."[6] Finally, the military judge also determined:

> As it relates to the indecent language in this case . . . the indecency of a word or words must be evaluated in the context in which they were made, and the court finds that the context in which these statements were made were in relation to Internet chats that the Accused was having with an undercover agent who had represented to him that she was under the age of 16, in fact that she was 14. Taking that context into consideration, the court finds that the indecency of these words, the language utilized in here does fit the definitions under Article 134 of indecent language and the definitions that I provided to the Accused.[7]

The Appellant admitted he intended to corrupt morals or excite libidinous thoughts because of the sexual nature of his language. Viewed in the context of the entire record, including the words he used, the circumstances under which this language was communicated, the audience for the language, and the community standards, even for a communication to someone over the age of 16, the military judge did not abuse his discretion in accepting the plea. We therefore hold that there is no substantial basis in law or fact to question the providence of Appellant's guilty plea.

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the approved findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substan-

---

[4] Record at 36-37.

[5] *Id.* at 42.

[6] *Id.* at 42-43.

[7] *Id.* at 54.

tial rights occurred. Arts. 59, 66, UCMJ. The findings and sentence as approved by the convening authority are **AFFIRMED**.

Senior Judge HITESMAN and Judge GASTON concur.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court