UNITED STATES, Appellee,

v.

Benjiman JOHNSON, Staff Sergeant,
U.S. Army, Appellant.

No. 99–0556.
Crim.App. No. 9602016.

U.S. Court of Appeals for
the Armed Forces.

Argued Jan. 13, 2000.

Decided Sept. 7, 2000.

Sullivan, J., dissented and filed opinion.

COX, S.J., delivered the opinion of the Court, in which CRAWFORD, C.J., GIERKE, and EFFRON, JJ., joined. SULLIVAN, J., filed a dissenting opinion.

For Appellant: *Captain Kirsten C. Brunson* (argued); *Colonel Adele H. Odegard, Colonel Peter V. Train* (USAR), and *Major Scott R. Morris* (on brief); *Colonel John T. Phelps II.*

For Appellee: *Captain Mary E. Braisted* (argued); *Colonel Russell S. Estey* (on brief).

Senior Judge COX delivered the opinion of the Court.

On October 22, December 9, 12, and 13, 1996, and January 16, 1997, appellant, a staff sergeant, was tried by a general court-martial comprised of officer and enlisted members. Pursuant to his pleas, he was found guilty of carnal knowledge, in violation of Article 120, Uniform Code of Military Justice, 10 USC § 920. Contrary to his pleas, he was found guilty of one specification each

of maltreatment[1] and assault consummated by a battery,[2] in violation of Articles 93 and 128, UCMJ, 10 USC §§ 893 and 928, respectively. Appellant was sentenced to a bad-conduct discharge, 5 years' confinement, forfeiture of $874.00 pay per month for 60 months, and reduction to the grade of Private E–1. The convening authority approved this sentence.

The carnal-knowledge conviction resulted from appellant's admitted sexual intercourse (3 times) with S, a 14–year–old girl he was babysitting. Appellant does not appeal this conviction. The maltreatment and assault-consummated-by-a-battery convictions resulted from incidents which occurred between appellant and Specialist (SPC) MC over a year (June 1995–June 1996).

The Court of Criminal Appeals set aside the finding of guilty of maltreatment of SPC MC and dismissed that charge in an unpublished opinion. The convictions for carnal knowledge (of SP) and assault consummated by a battery (of SPC MC) were affirmed. Unpub. op. at 2–3. The sentence was also affirmed, based on the entire record and the error noted, under *United States v. Sales*, 22 MJ 305 (CMA 1986). Unpub. op. at 3.

We granted review of the following issues:

## I

WHETHER THE EVIDENCE IS LEGALLY INSUFFICIENT TO PROVE APPELLANT GUILTY OF ASSAULT AND BATTERY AS [SPC MC] CONSENTED TO THE TOUCHING.

## II

WHETHER THE EVIDENCE IS LEGALLY INSUFFICIENT TO PROVE APPELLANT GUILTY OF ASSAULT AND BATTERY AS [SPC MC's] CONDUCT GAVE APPELLANT THE MISTAKEN BELIEF THAT SHE CONSENTED TO THE TOUCHING.

## FACTS

At the time of the offenses, SPC MC was stationed at Fort Drum in the 10th Mountain Division Band. According to SPC C, appellant was SPC C's squad leader, operations NCO, and friend. When asked if appellant had ever touched her in any way, SPC C testified that the touches consisted of: "Massages, hugs, tickling, [and] punching fights."

This conduct lead to appellant's being charged with one specification of hugging SPC C and rubbing her back with the intent to gratify his lust and sexual desires. As a result of SPC C's trial testimony that the hugs were consensual and pursuant to a defense motion for a finding of not guilty, the military judge excepted "hugging" from the specification. The members also altered the specification, finding appellant, by exceptions and substitutions, not guilty of indecent assault on SPC C, but guilty of the lesser-included offense of assault consummated by a battery by rubbing her back.

With regard to the backrubs, SPC C testified that appellant rubbed her back on several occasions when she was "typing or doing some type of work." SPC C shrugged "to try to get out of it," but did not specifically tell him to stop because "there was [sic] other people around and [she] didn't want any attention." SPC C testified on direct examination that she didn't like the backrubs because they interrupted her work, and later on redirect examination, that they made her feel uncomfortable. She also testified that in response to her shrugging, sometimes appellant would stop and sometimes he would rub a little bit more. She testified that she didn't report this conduct because she didn't want to draw attention to herself and because

> at the time, I didn't feel it was necessary. And the reason why I did come out with this is because when the whole case with [SP] came out, my commander had asked all the squad leaders—

At this point the testimony was interrupted by a hearsay objection. SP is the 14–year–old daughter of appellant's supervisor in the

---

1. At trial, appellant was found not guilty of another specification of maltreatment.

2. The members found appellant not guilty of indecent assault, but guilty of the lesser-included offense of assault consummated by a battery.

same band unit. Appellant was charged with carnal knowledge of SP which occurred while appellant was babysitting SP.

The court below concluded, with respect to the back rubbing: "A failure to verbally protest, and thus draw attention to oneself, when the assault takes place in an open administrative office, does not equate to consent." Unpub. op. at 2–3. The court below also concluded that failing "to confront appellant and verbalize that his improper touching bothered her could not have raised an honest and reasonable belief in the mind of this experienced NCO that SPC C consented to his advances." *Id.* at 3.

## DISCUSSION

■ The elements of assault consummated by a battery are (1) "That the accused did bodily harm to a certain person; and" (2) "That the bodily harm was done with unlawful force or violence." Para. 54b(2), Part IV, Manual for Courts–Martial, United States (1995 ed.). The "bodily harm ... must be done ... without the lawful consent of the person affected." Bodily harm is defined as "any offensive touching of another, however slight." Para. 54c(1)(a). We have also determined that, as a general matter, consent "can convert what might otherwise be offensive touching into nonoffensive touching" and that "a reasonable and honest mistake of fact as to consent constitutes an affirmative defense in the nature of legal excuse." *United States v. Greaves*, 40 MJ 432, 433 (CMA 1994).[3]

■ The question presented is whether in view of the nature of the physical contact involved in the friendly relationship between appellant and SPC C, a reasonable factfinder could conclude beyond a reasonable doubt that the backrubs were undertaken without the consent of SPC C. SPC C, according to her own testimony, regarded appellant as a friend. She also testified, when asked if

appellant had ever touched her in any way, that the touches consisted of: "Massages, hugs, tickling, [and] punching fights." This conduct lead to the charge against appellant for hugging SPC C and rubbing her back. No charges were brought against appellant for the tickling and punching fights the two engaged in. At trial, SPC C testified that the hugs were consensual, and the military judge eliminated "hugging" from the specification, leaving only the backrubs.

■ There is no question that a backrub could, under some circumstances, constitute an offensive touching; this Court has found even a kiss to be an offensive touching. *See United States v. Sever*, 39 MJ 1 (1994). We are also sensitive to the fact that appellant was a superior noncommissioned officer and that such a relationship can create a "unique situation of dominance and control". *United States v. Clark*, 35 MJ 432, 436 (CMA 1992).

Under the facts presented here, however, there is no indication that SPC C felt unable to protest appellant's actions and in fact felt comfortable enough to shrug him off. Numerous types of touches marked SPC C's relationship with appellant, none of which SPC C testified were offensive. On the contrary, the only difficulty SPC C had with the backrubs was related to appellant's poor judgment. She was uncomfortable because the backrubs were open and notorious in the work environment, but she did not provide any evidence that they were offensive. Although the evidence may show appellant's bad judgment or a violation of other social or military norms, we hold that the evidence does not support a criminal conviction for assault consummated by a battery under Article 128. The fact that SPC C was not motivated to report any of this mutual touching, including the backrubs, until she heard about the carnal-knowledge charge against appellant which involved the young daughter of another band member, supports this conclusion.[4]

3. Our dissenting colleague, in his zeal to affirm appellant's assault-consummated-by-a-battery conviction, turns the burden of proof on its head. It is not the burden of appellant to prove that SPC C consented to the backrubs; rather, in the entire context of this case, the burden was on the Government to prove each and every element of

the assault consummated by a battery, one of which is lack of consent. Para. 54c(1)(a).

4. With respect to our colleague's expressions of concern about sexual harassment, we emphasize that sexual harassment should not and cannot be

Even viewing this evidence in the light most favorable to the Government, we are not persuaded that appellant was on notice that SPC C did not consent to the backrubs, and we do not believe that a rational trier of fact could have found the elements of assault consummated by a battery beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560. (1979); *United States v. Turner,* 25 MJ 324, 326 (CMA 1987). Accordingly, that conviction cannot stand. This action requires further review of the sentence by the court below.

The decision of the United States Army Court of Criminal Appeals is reversed as to Charge III and its specification and the sentence. The findings of guilty thereon are set aside and that charge is dismissed. The record of trial is returned to the Judge Advocate General of the Army for remand to the Court of Criminal Appeals for reassessment of the sentence based on the remaining findings of guilty.

SULLIVAN, Judge (dissenting):

I cannot join the Judges of the majority today when they reverse the assault-and-battery conviction of appellant, because I believe they do so in violation of the well-established standard set out by *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Looking at the record in this case, one can plainly see that there is sufficient evidence, *when viewed in the light most favorable to the Government,* to uphold the jury's conviction of appellant for assault and battery. *Jackson v. Virginia, supra.*

The record clearly shows that the victim, Specialist (SPC) MC, was given repeated uninvited "back massages" by her superior, Staff Sergeant (SSG) Johnson in her work-place. These back massages formed the basis for the conviction of SSG Johnson for assault and battery of SPC C. The evidence of the assault and battery comes from the direct testimony of SPC C. A key and unrebutted portion of that evidence from the record of trial is as follows:

Q. [By Prosecutor] I want to talk about the back massages you made reference to. Describe for us how he would massage you.

A. [By the Victim, SPC C] It was usually when I was working in the Admin office upstairs in T–341. I was usually typing or doing some type of work and he would come up to me and massage my back. And I would shrug to try to get out of it, and I never really did say anything, because I didn't want attention. And I didn't want and—because there was other people around and I didn't want any attention.

Q. How did you feel about those massages?

A. I didn't like them. They were interrupting my work.

Q. And what if anything did you do to try to stop the accused from massaging you?

A. I would just shrug my shoulders to try to get out of it. I would never say anything. I would just pull myself forward just to get out of it.

Q. And what did he do in response to your shrugging?

A. Sometimes he would quit. And there were other occasions, he would just massage a little bit more.

Q. Do you believe that was appropriate conduct for a noncommissioned officer?

A. No, I do not.

Q. [SPC C], has the accused ever made any[1] sexually related comments to you?

---

tolerated in the military community. Appellant, however, was charged with assault, not with sexual harassment. Thus, as appellate judges, we are not confronted with the question whether appellant was guilty of sexual harassment, but rather whether the Government proved each and every element of assault consummated by a battery beyond a reasonable doubt. It did not.

1. At trial, the jury heard evidence that appellant made four sexually-related comments to the vic-

tim. These comments formed the basis of the conviction of appellant for maltreatment. The lower court voided that conviction on appeal on legal, not factual, grounds. However, it is unrebutted that appellant made such comments to the victim. One example of such comments was a remark by appellant when he was supervising the victim on a work detail; appellant said to the males on the detail that they could take off their shirts and the victim could also. He said, "Go

A. Yes, he has, ma'am.

(R. 123–24)

There is no direct evidence in the record that the victim consented to these touchings by appellant. The only evidence in the record which is directly related to the issue of consent is the fact that the victim tried to escape these back massages by her superior. She stated:

> I would just shrug my shoulders to try to get out of it [the uninvited back massages by appellant]. I would never say anything. I would just pull myself forward just to get out of it.

(R. 124) Appellant apparently understood the meaning of the non-verbal actions of the victim sending signals of non-consent because as she testified:

> Q. [By Prosecutor] And what did he do in response to your shrugging?
>
> A. [By Victim] Sometimes he would quit. And there were other occasions, he would just massage a little bit more.

(R. 124)

If one looks for direct evidence that appellant may have been under the mistaken belief that the victim consented to the touching, there is also none in this record. Neither the Government nor the defense offered any direct evidence either through witnesses or by testimony of appellant that appellant thought she consented. To make up for no direct evidence in this area, the majority circumstantially relies on evidence of prior consensual physical touchings ("hugs") of the alleged victim by appellant.[2] Surprisingly, the majority ignores the evidence that there was no express consent in this case and the evidence that appellant was under no mistaken belief of consent with respect to these particular back massages. Instead, the majority focuses on the victim's late reporting of

the massages[3] and its semantic assertion that "she did not provide any evidence that they were offensive." 54 MJ at 69 (only evidence she was "uncomfortable").

Contrary to the majority, the court below (a court with special factfinding powers) had no trouble with the legal sufficiency of the assault-and-battery charge and the finding of non-consent. That court found:

> In two additional, related assignments of error, appellant attacks his conviction for assault consummated by a battery. He maintains that SPC C consented to his hugging her and rubbing her back, and the victim's conduct gave him the mistaken belief that she did consent to the contact. The evidence shows otherwise.
>
> SPC C testified that appellant's back massages "made her feel uncomfortable." She shrugged her shoulders and wriggled to manifest her discomfort and dislike of appellant's actions. A failure to verbally protest, and thus draw attention to oneself, when the assault takes place in an open administrative office, does not equate to consent. *See generally United States v. Bonano–Torres,* 29 MJ 845 (ACMR 1989). Similarly, SPC C's failure to confront appellant and verbalize that his improper touching bothered her could not have raised an honest and reasonable belief in the mind of this experienced NCO that SPC C consented to his advances.
>
> We have considered the matters personally raised by the appellant pursuant to *United States v. Grostefon,* 12 MJ 431 (CMA 1982), and find them to be without merit.

*United States v. Johnson,* unpub. op. at 2–3.

In a separate concurring opinion, one of the judges concisely summarized the evi-

---

ahead and take off your shirt. I wouldn't mind seeing your breasts." (R. 126)

**2.** I disagree with the majority's suggestion that failure to object to prior sexual advances somehow constitutes a defense to later sexual advances which are rejected by the victim. *See United States v. Hullett,* 40 MJ 189, 194 (CMA 1994) (Sullivan, C.J., and Crawford, J., dissent-

ing); R. Perkins and R. Boyce, *Criminal Law,* Ch. 9 § 3A at 1077 (3d ed.1982).

**3.** It is telling of the majority's mind-set to note that while the trial record and the lower court consistently refer to appellant's touchings of SPC C as "back massages" in the course of this criminal prosecution, the majority uses the euphemism "backrubs" to describe the uninvited touchings. 54 MJ at 68, 69, and 70.

dence supporting the assault-and-battery charge as follows:

> The evidence shows appellant to be a sexual predator who, *inter alia*, embarked on a campaign of unwarranted sexually suggestive remarks and physically assaultive overtures in hopes of engaging a subordinate, SPC C, in a romantic adventure.

*United States v. Johnson,* unpub. op. at 3 (Squires, J., concurring).

Contrary to the majority, I agree with the lower court's findings on the legal sufficiency of the assault-and-battery conviction of appellant. *See Jackson v. Virginia, supra.* Furthermore, in my view, the U.S. Army Court of Criminal Appeals properly used its factfinding power and experience to correctly assess all the evidence in this case on the question of legal sufficiency and consent in light of the unique military setting of a superior-subordinate relationship. *See generally Parker v. Levy,* 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974).

In this regard, I note my dissenting opinion in *United States v. Hullett,* 40 MJ 189, 194–95 (1994) (Sullivan, C.J., and Crawford, J., dissenting), where I said:

> Here, a competent jury of his peers found that the above-quoted words spoken by a married senior noncommissioned officer (NCO) to a young junior soldier in the performance of her duties during work hours at the workplace of the senior NCO were of an indecent nature. I cannot disagree with their finding and that of the court below. *In today's Army, no junior soldier should have to put up with such remarks and appellant should not be excused from the consequences of his remark because, as the lead opinion puts it, "The remark in question was a common joke."* 40 MJ at 193. I would affirm.

(Emphasis added.)

Likewise, in appellant's case, I do not agree with the majority's holding that appellant should be excused from the conse-

quences of his offensive physical touchings because there was no verbal protest by the junior enlisted female victim in this military-office environment. *See United States v. Clark,* 35 MJ 432, 436 (CMA 1992) (recognizing unique situation of discrimination and control presented by superior rank and position), *cert. denied,* 507 U.S. 1052, 113 S.Ct. 1948, 123 L.Ed.2d 653 (1993). Some subordinates in the Army, like some subordinates in the workplaces of America, may not verbally protest every offensive touching by their boss. Some subordinates may say nothing or may communicate by non-verbal conduct like the victim in this case. Why? Well, in this case, the victim explained that she "never really did say anything, because I didn't want attention ... because there were other people around and I didn't want any attention." R. 123.

From a legal viewpoint, this case should be affirmed. In this case, a military judge implicitly found that there was sufficient evidence of assault and battery by his allowing this charge to be submitted to the military jury. That jury which heard the evidence convicted appellant of this crime beyond a reasonable doubt. Later, three appellate military judges, on the appeal, found that there was sufficient evidence to sustain the conviction. Notwithstanding this solid legal case, the majority of this Court, without legal authority, substitutes its view for the supported findings of the judge, the jury, and the lower appellate court.[4]

The majority is bound by the evidence of record legally supporting this crime. The record showed that the victim by non-verbal conduct did show that she didn't want to be touched by her superior. The record further showed that appellant was in a power relationship with her, not a dating or sexual relationship. On the contrary, the record showed that there was a one-way sexual interest manifested by sexual comments and touchings by her supervisor, who was at one point her squad leader, her work-detail su-

---

4. The majority is not a jury of factfinders. If they were members of the jury in this case, perhaps they could have argued to the other jury members that the back massages were not offensive to them. They also could have tried to convince the other jury members that the victim consented to the massages. But the majority are not factfinders and they cannot find such facts now when sitting as an appellate court of law. Article 67(c), UCMJ, 10 USC § 867(c) (1994).

pervisor, and then later her operations non-commissioned officer. The record clearly shows that the victim evidenced her lack of consent by obvious evasive conduct, that she did so on a number of occasions, and that appellant persisted in continuing to physically massage her. In view of this evidence, Supreme Court precedent does not allow me to overturn this conviction. *Jackson v. Virginia, supra; see United States v. Cage*, 42 MJ 139, 147 (1995) (Sullivan, C.J., dissenting) ("If the majority were driving a car on the road to justice in this case, I am certain it would crash into the stonewall of *Jackson v. Virginia, supra*."). Evidence of appellant's *repeated* uninvited public massages of a female subordinate's person against her will is a rational basis for the members to reject the mistake-of-fact defense and is sufficient to uphold the conviction of assault and battery.

In my view, the majority today takes the law relating to sexual harassment in the workplace back a few steps from the progress our modern armed forces have made along the path of true protection for subordinate servicemembers. I respectfully dissent in this significant case.