OPINION OF THE COURT
JOHNSON, Senior Judge:
A general court-martial composed of officer and enlisted members convicted appellant, contrary to his pleas, of assault consummated by a battery in violation of Article 128, Uniform Code of Military Justice, 10 U.S.C. § 928 [hereinafter UCMJ]. The convening authority approved the adjudged sentence of a bad-conduct discharge and confinement for two months.
The ease is before the court for automatic review pursuant to Article 66, UCMJ, 10 U.S.C. § 866. On 4 May 2005, the court specified the following issue:
WHETHER THE MILITARY JUDGE ERRED IN FAILING TO SUA SPONTE INSTRUCT THE PANEL MEMBERS ON THE DEFENSE OF MISTAKE OF FACT AS IT APPLIED TO THE OFFENSE OF ASSAULT CONSUMMATED BY A BATTERY.
We have considered the record of trial, appellant’s brief on the specified issue and the government’s reply thereto. We answer the specified issue in the affirmative and will grant appropriate relief in our decretal paragraph.
FACTS
On 7 February 2004, Private First Class (PFC) EM went to a local club with a friend where she had three or four pint-sized glasses of German beer. Around 0100 the next morning, they returned to the barracks. Private First Class EM went to another barracks to look for another friend of hers. She encountered appellant, who informed her that the friend she was looking for was not in the barracks. Private First Class EM testified that she stumbled in the hallway and appellant offered to walk her back to her room. She said that she would be fine and talked to appellant and some other people in the hallway for a minute. When she stumbled again, she accepted appellant’s help. She stated that when they got to her room she thanked appellant and told him good night. She said that she went into her room, leaving the door open for her roommate. After taking off her jacket and emptying her pockets, PFC EM testified that she laid on her bed, fully clothed.
Private First Class EM testified that the next thing she remembered was hearing her door open and appellant enter her room. He got into bed with her and told her to wake up, but she did not respond. She alleged that appellant then rolled her over and tried to kiss her while holding her arm down. She stated that she told appellant “no” and tried *566 to move away. Appellant, however, continued to kiss her and fondled her breasts over her bra. She said that he unbuttoned and unzipped her pants and started rubbing her vagina while she continued to say “no” and move away. Private First Class EM then feigned vomiting and appellant “backed off’ enough that she could get off the bed. She walked toward the bathroom and then “took off’ out the front door, down the hallway to her neighbor’s room.
Special Agent (SA) David Sutton testified that on 9 February 2004, he was notified that PFC EM had made a complaint that an unknown Hispanic male had indecently assaulted her. After talking to PFC EM, SA Sutton decided to take a picture of all Hispanic males assigned to the unit where he believed that the perpetrator might be assigned, based on the barracks where PFC EM said she met the man. When appellant was brought in to be photographed, he told SA Sutton that he believed he was the individual for whom SA Sutton was looking.
Appellant provided a written statement in which he related that he met PFC EM early on 8 February 2004. He said they started talking and he offered to take her back to her room. “When they got to her room, he opened the door and walked in. Appellant said PFC EM took off her coat and sat on the bed and that he sat next to her. He then laid her down on the bed and began kissing and touching her upper body. Private First Class EM then said “no, stop.” Appellant said, “I grabed [sic] her ... touch her body and I stop.” He said that PFC EM ran to the bathroom, he panicked and left the room. Appellant ended his statement by saying they were both drunk. On cross-examination, SA Sutton admitted that appellant also said that he met PFC EM in the stairwell and they sat on a blanket he was carrying and talked for a while. Appellant said that he then walked her to her room, where they were kissing each other.
After the close of the evidence, the parties discussed the instructions the military judge would provide to the members. Both parties agreed that the military judge should instruct on the charged offense of assault with intent to commit rape, as well as the lesser-included offenses of indecent assault and assault consummated by a battery. The parties also agreed that the defense of mistake of fact was raised for the offense of assault with the intent to commit rape and the lesser-included offense of indecent assault. However, the military judge said, “And there doesn’t appear to be any mistake of fact instruction with regard to battery. Are you requesting one?” The defense counsel responded, ‘Your Honor, I simply do not want to request one for the battery.”
In accordance with this discussion, the military judge instructed the panel members on the elements of the agreed upon offenses. He informed the members that the elements of assault with the intent to commit rape are:
One, that on or about 8 February 2004, at or near Hanau, Germany, the accused did bodily harm to [PFC EM];
Two, that the accused did so by holding her down and touching her breasts and vagina with his hands;
Three, that the bodily harm was done with unlawful force or violence;
Four, that at the time the accused intended to commit rape; and
Five, that under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.
As to indecent assault, the military judge explained:
One, that on or about 8 February 2004, at or near Hanau, Germany, the accused did bodily harm to [PFC EM];
Two, that the accused did so by touching her breasts and vagina with his hands; Three, that the act was done with unlawful force or violence;
Four, that [PFC EM] was not the wife of the accused;
Five, that the accused’s acts were done without the consent of [PFC EM] and against her will;
Six, that the act was done with the intent to gratify the sexual desires of the accused; and *567 Seven, that, under the circumstances, the conduct of the accused was [to] the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.
Finally, the military judge explained the elements of assault consummated by a battery:
One, that on or about 8 February 2004, at or near Hanau, Germany, the accused did bodily harm to [PFC EM];
Two, that the accused did so by touching her on the breasts and vagina with his hands; and
Three, that bodily harm was done with unlawful force or violence.
The military judge next informed the members as to the issue of voluntary intoxication as it related to the offenses of assault with the intent to commit rape and indecent assault. He then instructed the members concerning the defense of mistake of fact as follows:
The evidence has also raised the issue of mistake on the part of the accused concerning whether Private First Class [M] would consent to sexual intercourse in relation to the offense of assault with intent to commit rape. I advised you earlier that to find the accused guilty of the offense of assault with intent to commit rape, you must find, beyond a reasonable doubt, that the accused had the specific intent to commit rape, that is, sexual intercourse by force and without consent. If the accused, at the time of the offense, was under the honest and mistaken belief that Private First Class [M] would consent to sexual intercourse, then he cannot be found guilty of the offense of assault with the intent to commit rape. The mistake, no matter how unreasonable it might have been, is a defense.
The evidence has also raised the issue of mistake on the part of the accused concerning whether Private First Class [M] consented to the touching of her breasts and vagina, in relation to the offense of indecent assault. The accused is not guilty of the offense of indecent assault if: One, he mistakenly believed that Private First Class [M] consented to him touching her breasts and vagina; and Two, if such belief was on his part, reasonable.
To be reasonable, the belief must have been based on information, or lack of it, which would indicate to a reasonable person that Private First Class [M] consented to the touching of her breasts and vagina.
The military judge provided no instruction regarding the defense of mistake of fact as it applied to the offense of assault consummated by a battery. The members subsequently returned findings of not guilty to the offenses of assault with the intent to commit rape, but guilty to assault consummated by a battery.
LAW
The military judge bears the “primary responsibility” for ensuring that a court-martial panel is properly instructed on the law pertaining to a ease. United States v. Miller, 58 M.J. 266, 270 (C.A.A.F.2003). “Instructions” to a court-martial panel “consist of a statement of the issues in the case and an explanation of the legal standards and procedural requirements by which the members will determine findings. Instructions should be tailored to fit the circumstances of the case, and should fairly and adequately cover the issues presented.” Rule for Courts-Martial [hereinafter R.C.M.] 920(a) discussion.
“Even though not requested, a military judge has a sua sponte duty to give certain instructions when reasonably raised by the evidence.” United States v. McDonald, 57 M.J. 18, 20 (C.A.A.F.2002); see also United States v. Wolford, 62 M.J. 418, 422 (C.A.A.F.2006). Article 51(c), UCMJ, 10 U.S.C. § 851(c), mandates that the military judge instruct the panel members on the presumption of innocence and the government’s burden to prove an accused’s guilt beyond a reasonable doubt. Rule for Courts-Martial 920(e) further delineates certain “required instructions” which must be given by the military judge. These include a description of the elements of each charged offense, the elements of any lesser-ineluded offense in issue, and a description of any special defense under R.C.M. 916 in issue. *568 R.C.M. 920(e). Errors regarding these mandatory instructions are reviewed de novo. United States v. Forbes, 61 M.J. 354, 357 (C.A.A.F.2005).
The evidence that places a special defense in issue need not “be compelling or convincing beyond a reasonable doubt. Instead, the instructional duty arises whenever some evidence is presented to which the fact finders might attach credit if they so desire.” United States v. Taylor, 26 M.J. 127, 129-30 (C.M.A.1988) (quoting United States v. Jackson, 12 M.J. 163, 166-67 (C.M.A.1981) (internal quotations omitted)). A defense “ ‘may be raised by evidence presented by the defense, the prosecution, or the court-martial.’ ” United States v. Hibbard, 58 M.J. 71, 73 (C.A.A.F.2003) (quoting R.C.M. 916(b) discussion). As we have previously articulated:
Trial judges should view the standard used to decide whether to give an instruction on an affirmative defense as a ‘mirror image’ of that used to decide whether to grant a motion for a finding of not guilty. In deciding whether to direct a finding of not guilty, the military judge views the evidence ‘in the light most favorable to the prosecution, without an evaluation of the credibility of the witnesses.’ R.C.M. 917(d). Similarly, ... ‘[a]ny doubt whether the evidence is sufficient to require an instruction should be resolved in favor of the accused.’
United States v. Jenkins, 59 M.J. 893, 898 (Army Ct.Crim.App.2004) (quoting United States v. Steinruck, 11 M.J. 322, 324 (C.M.A.1981)).
Rule for Courts-Martial 916 delineates special defenses recognized in the military, including “ignorance or mistake of fact.” This defense generally arises when “the accused held, as a result of ignorance or mistake, an incorrect belief of the true circumstances such that, if the circumstances were as the accused believed them, the accused would not be guilty of the offense.” If the mistake relates to an element requiring specific intent, it must only “have existed in the mind of the accused” to constitute a defense. R.C.M. 916(j)(l). However, if the mistake relates to an element requiring general intent, the mistake “must have existed in the mind of the accused and must have been reasonable under all the circumstances.” Id.
DISCUSSION
To resolve the specified issue, we must address three questions. First, did the evidence reasonably raise the defense of mistake of fact with regard to the lesser-inelud-ed offense of assault consummated by a battery, necessitating an instruction on the issue? If so, did the defense counsel waive the required instruction on the defense? Finally, if the instruction was required and not waived, was appellant prejudiced by its omission?

Necessity of Mistake of Fact Instruction

As alleged in this case, the charged offense of assault with the intent to commit rape and the lesser-ineluded offenses of indecent assault and assault consummated by a battery shared a common element; that the accused inflicted “bodily harm” on PFC EM. Manual for Courts-Martial, United States (2002 ed.) [hereinafter MCM], Part IV, paras. 54b(2), 63, 64. “Bodily harm” is defined as “any offensive touching of another, however slight,” MCM, Part IV, para. 54c(l)(a), and requires only general intent. See United States v. Peterson, 47 M.J. 231, 234 (C.A.A.F.1997). “[A]s a general matter, consent ‘can convert what might otherwise be offensive touching into nonoffensive touching.’ ” United States v. Johnson, 54 M.J. 67, 69 (C.A.A.F.2000) (quoting United States v. Greaves, 40 M.J. 432, 433 (C.M.A.1994)). Thus, an honest and reasonable mistake of fact by appellant as to PFC EM’s consent to this touching would have constituted a defense to all three assaults. See id.
In this case, the entire defense theory was focused on mistake of fact. The defense counsel’s opening statement to the panel began, “Members of the Panel, we know through human experience that people make mistakes, that sometimes they misperceive situations, and that people misperceive what other people are doing. That is what this case is about. Mistakes that were made, but no crime was committed.” Appellant’s written statement to Criminal Investigation Command (CID) described a consensual en *569 counter, which was further buttressed by his verbal statements to SA Sutton that he and PFC EM met and sat and talked for a while, and then walked back to her room where they began kissing each other. While PFC EM describes a far different situation, we do not judge the credibility of the witnesses or the evidence raising the defense. See United States v. Barnes, 39 M.J. 230, 232 (C.M.A.1994). We agree with the military judge and the parties at trial that the evidence was sufficient to raise the defense of mistake of fact as to the element of bodily harm. Cf. United States v. Rodwell, 20 M.J. 264, 267 (C.M.A.1985) (stating “we are loathe to disregard the views of all the trial participants as to the state of the evidence” with regard to instructions on lesser-included offense).
The government, however, argues that the instruction was not required for the offense of assault consummated by a battery because “[t]he military judge, exercising his substantial discretionary power in deciding instructions, determined that the mistake of fact defense was not reasonably raised by the evidence requiring a sua sponte instruction.” We disagree. For both the indecent assault and the assault consummated by a battery offenses, the military judge informed the panel members that appellant was alleged to have inflicted bodily harm on PFC EM “by touching her breasts and vagina with his hands.” With the agreement of both parties, the military judge instructed on the defense of mistake of fact as it related to the “bodily harm” element of indecent assault, but not as to the same element of assault consummated by a battery.[1] Both the legal requirements and the facts alleged for each element were the same. Just as the mistake of fact defense was reasonably raised in relation to the touching of the victim’s breast and vagina for the former offense, it was also raised as to the latter. Consequently, an instruction on mistake of fact as it applied to the offense of assault consummated by a battery was required.

Waiver

In responding to the military judge’s statement that “there did not appear to be any mistake of fact instruction with regard to assault consummated by a battery,” the defense counsel responded that he “simply [did] not want to request one.” Rule for Courts-Martial 920(f) states that “(failure to object to an instruction or to omission of an instruction before the members close to deliberate constitutes waiver of the objection in the absence of plain error.” However, this rule has been held to be “inapplicable to certain mandatory instructions such as reasonable doubt, the elements of the offenses, and affirmative defenses.” United States v. Miller, 58 M.J. 266, 270 (C.A.A.F.2003); United States v. Davis, 53 M.J. 202, 205 (C.A.A.F.2000); Taylor, 26 M.J. at 128-29.[2]
A required instruction cannot be waived by “a mere failure to object to erroneous instructions or to request proper instructions.” United States v. Smith, 50 M.J. 451, 455-56 (C.A.A.F.1999) (quoting United States v. Mundy, 2 U.S.C.M.A. 500, 502, 9 C.M.R. 130, 132, 1953 WL 2619 (1953)); Barnes, 39 M.J. at 233; Taylor, 26 M.J. at 128 (stating that when a special defense is reasonably raised by the evidence, the military judge must instruct the court members on it, “regardless of defense theories or requests”). Instead, waiver of such an instruction “must be established ‘by affirmative action of the accused’s counsel.’” Smith, 50 M.J. at 455-56; see also United States v. Wolford, 62 M.J. 418, 422 (C.A.A.F.2006); Barnes, 39 M.J. at 233. While there are no “magic words” required to constitute a valid waiver, Smith, 50 M.J. at 456, the record must reflect that the decision to forego a required instruction represents an “affirmative, calculated, and designed course of ae *570 tion” by the defense counsel.[3] See United States v. Moore, 12 U.S.C.M.A. 696, 31 C.M.R. 282, 1962 WL 4413 (1962) (analyzing waiver in relation to otherwise required lesser-included offense instruction) (quoting United States v. Mundy, 2 U.S.C.M.A. 500, 9 C.M.R. 130, 1953 WL 2619 (1953) (analyzing waiver as applied to lesser-included offense instruction)). See also United States v. Stra-chan, 35 M.J. 362, 364 (C.M.A.1992) (finding no plain error where “defense counsel knowingly and intelligently waived an instruction on the lesser-included offense after discussing the option with the military judge”); United States v. Pasha, 24 M.J. 87, 91 (C.M.A.1987) (finding that defense counsel’s indication of satisfaction and agreement with the determination of the military judge on the issue of a lesser-included offense amounted to an affirmative waiver and that there was a “tactical advantage” to appellant in foregoing instructions on lesser-included offenses and taking an “all or nothing” approach to the findings).
We find no such purposeful, conscious decision in this case. Throughout appellant’s entire trial, the defense was focused on the issue of consent and mistake of fact in relation to appellant’s touching of PFC EM. There was no reason articulated, and we can conceive of none, as to why the defense counsel would choose to abandon his theory of the case as it applied to the offense of assault consummated by a battery. Indeed, after stating that he was not requesting the instruction, the defense counsel returned to the “mistake” theme during closing argument:
What you should also consider is the mistake that he made that night, the mistake of fact concerning consent. Everything that happened is not consistent with an intent to rape. The government has it all wrong. Private Gutierrez may have wanted to have sex that night, but he didn’t intend to rape anyone. Private [EM] got up. He doesn’t have his clothes undone. He’s kissing her. Trying to arouse someone. That’s not consistent with intent to commit rape. In fact, his mistake was very reasonable. “When an individual who maybe said ‘no’ once and he did stop, and the individual doesn’t shout out, an individual who he had spoken with for a long time, and walked back arm in arm. Did he misperceive the situation? Absolutely, but he didn’t commit a crime. That criminal intent is lacking.
The defense counsel’s statement that he “did not want to request” the instruction, when viewed in context, was not the result of a “carefully considered tactic.” See Mundy, 2 U.S.C.M.A. at 504, 9 C.M.R. at 134. Instead, when viewed in context of the entire defense case, the statement was little more than an off-the-cuff acquiescence to the military judge’s erroneous assertion that the instruction on mistake of fact was not applicable to the offense of assault consummated by a battery. Compare Taylor, 26 M.J. at 131 (stating that given the failure of the defense to rely on the mistake of fact defense, there was “no basis to assume that defense counsel simply overlooked the availability of [the] defense”). We conclude that this was not sufficient to establish a waiver of an otherwise required instruction on an affirmative defense which could have provided a complete defense to the charge of which appellant was eventually convicted.

Prejudice

When a required instruction is not given to the members, our superior court has stated that “the test for determining whether this constitutional error was harmless is whether it appears ‘beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.’ ” United States v. McDonald, 57 M.J. 18, 20 (C.A.A.F.2002) (quoting Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)). In other words, “ ‘Is it clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the *571 error?’ ” Id. (quoting Neder v. United States, 527 U.S. 1, 18, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999)). In answering this question, the reviewing court does not become a second jury resolving the question of guilt de novo. Neder, 527 U.S. at 19, 119 S.Ct. 1827. Instead, the court should ask whether the record “contains evidence that could rationally lead to a contrary finding” regarding the issue on which the panel should have been instructed. See id.
As stated above, the defense theory was that appellant was mistaken about PFC EM’s consent to his touching. Especially in light of the members’ findings acquitting appellant of the two greater offenses, we are not convinced beyond a reasonable doubt that the members would have found appellant guilty of assault consummated by a battery if the military judge had properly instructed them.
As to the charged offense of assault with the intent to commit rape and the lesser-included offense of indecent assault, the military judge instructed the panel on the application of voluntary intoxication [4] and mistake of fact. Appellant was acquitted of both of these offenses. However, we do not know the rationale used by the panel in reaching their decision. It is possible that the panel may have acquitted appellant of assault with the intent to commit rape and indecent assault based upon the evidence of appellant’s voluntary intoxication. On the other hand, it is also possible that the panel found that the defense of mistake of fact applied to these offenses, as instructed by the military judge. If this was the case, appellant may have also been acquitted of assault consummated by a battery if the panel had been properly instructed on how the same affirmative defense applied to that offense. See United States v. Rodwell, 20 M.J. 264, 268 (C.M.A.1985) (stating that “[ajttempting to infer how court-members might have voted if properly instructed is always a risky business”).
The findings and the sentence are set aside. The same or different convening authority may order a rehearing. If the convening authority determines that a rehearing is impracticable he may dismiss the charge and its specification.
Judge OLMSCHEID and Judge KIRBY concur.

. The military judge did not instruct on the defense of mistake of fact in relation to the offensive touching element of assault with the intent to commit rape. However, because appellant was acquitted of this offense, we need not address the omission of the instruction as it applied to that element.

. Even in cases where R.C.M. 920(f) has been implicitly held to apply to required instructions, our superior court has emphasized that waiver can occur only through affirmative action by the defense and not a passive failure to request an instruction or object to its omission. See United States v. Smith, 50 M.J. 451, 455-56 (C.A.A.F.1999).

. For example, if the defense proceeds at trial under a theory of alibi, but the special defense of justification is raised by a government witness, the defense counsel may make a tactical decision to forego an otherwise required instruction on the special defense to avoid undercutting the theory of alibi. However, in such cases, the military judge should have a full discussion with the defense counsel documenting on the record the fact that the election to waive the instruction is based on a carefully considered defense strategy-

. Voluntary intoxication is not a defense; however, evidence of it may raise reasonable doubt as to the existence of an element requiring specific intent. R.C.M. 916(1)(2).