# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

---

## UNITED STATES

**v.**

## Captain BENJAMIN R. LOVERIDGE
### United States Air Force

## ACM 37872 (recon)

## 05 August 2014

Sentence adjudged 10 December 2010 by GCM convened at the United States Air Force Academy, Colorado. Military Judge: Scott E. Harding, Jr.

Approved Sentence: Dismissal, confinement for 3 months, and a reprimand.

Appellate Counsel for the Appellant: Major Michael S. Kerr; Major Zaven T. Saroyan; Major Daniel E. Schoeni; and Dwight H. Sullivan, Esquire.

Appellate Counsel for the United States: Colonel Don M. Christensen; Major Daniel J. Breen; Major Erika L. Sleger; and Gerald R. Bruce, Esquire.

Before

ALLRED, MITCHELL, and WEBER
Appellate Military Judges

OPINION OF THE COURT
UPON RECONSIDERATION

This opinion is subject to editorial correction before final release.

MITCHELL, Senior Judge:

Pursuant to his pleas, the appellant was convicted, by a general court-martial composed of a military judge sitting alone, of willful disobedience of a superior commissioned officer's order not to have contact with Staff Sergeant (SSgt) JR; conduct unbecoming an officer for engaging in an unprofessional relationship with

SSgt JR while he was her primary care manager; and adultery with SSgt JR, in violation of Articles 90, 133, and 134, UCMJ, 10 U.S.C. §§ 890, 933, 934. Contrary to his pleas, the appellant was convicted of negligent dereliction of duty for e-mailing sensitive medical notes to SSgt JR's ex-husband without her permission; false official statement; assault consummated by a battery for touching SSgt CH on the face and kissing her on the lips; assault consummated by a battery for touching Airman First Class (A1C) TB on her uniform collar and hair; and conduct unbecoming an officer for attempting to establish an unprofessional relationship with SSgt CH,[1] attempting to establish an unprofessional relationship with A1C TB, making inappropriate comments and gestures to SSgt LP, and for tickling the waist of SSgt MP, in violation of Articles 92, 107, 128, and 133, UCMJ, 10 U.S.C. §§ 892, 907, 928, 933.

The adjudged and approved sentence consisted of a dismissal, confinement for 3 months, and a reprimand.

*Procedural History*

On 25 June 2013, the Secretary of Defense, "[p]ursuant to [his] authority under title 5, United States Code, section 3101 *et seq*.," issued a memorandum that "appoint[ed] Mr. Laurence M. Soybel, a civilian employee of the Department of the Air Force, to serve as appellate military judge on the Air Force Court of Criminal Appeals." Memorandum from Sec'y of Def. Chuck Hagel for Sec'y of the Air Force Eric Fanning (25 June 2013).

When the appellant's case was initially before us, the appellant asserted two issues: (1) that the evidence is factually and legally insufficient to support the finding of guilty to the lesser included offense of negligent dereliction of duty for releasing SSgt JR's medical records to her ex-husband without her permission, and (2) that Specification 1 of Charge VII, which alleges adultery in violation of Article 134, UCMJ, fails to state an offense because it did not include the terminal element of that offense.

On 1 August 2013, we issued a decision affirming the approved findings and sentence. *United States v. Loveridge*, ACM 37872 (A.F. Ct. Crim. App. 1 August 2013) (unpub. op.). Pursuant to his appointment by the Secretary of Defense, Mr. Soybel was a member of the panel. The appellant petitioned our superior court for review of his case and filed a motion to vacate with this court. On 31 October 2013, our superior court dismissed that petition for review without prejudice. *United States v. Loveridge*, 73 M.J. 91 (C.A.A.F. 2013) (mem.). On 15 April 2014, our superior court issued its decision in *United States v. Janssen*, 73 M.J. 221, 225 (C.A.A.F. 2014), holding that the Secretary of Defense did not have the legislative authority to appoint civilian employees

---

[1] The appellant entered a plea of guilty to this Specification by exceptions, but after a litigated case the military judge found the appellant guilty as charged.

as appellate military judges and that his appointment of Mr. Soybel to this Court was "invalid and of no effect."

In light of *Janssen*, we granted reconsideration of the appellant's case on 29 April 2014 and permitted the appellant to file a supplemental assignment of errors. The appellant submitted a supplemental assignment of errors, asserting three new issues[2]: (1) the Government failed to prove a specific military duty to not release military medical records; (2) the appellant's due process right to speedy appellate processing was violated; and (3) he is entitled to sentence relief for non-prejudicial post-trial delay.

*Background*

The appellant was a married 33-year-old captain (Capt) with more than three years of service as a medical doctor stationed at the United States Air Force Academy (USAFA). After completing his funded medical training through the Uniform Services University of the Health Sciences, he was assigned to the 10th Medical Operations Squadron at USAFA. He was well regarded, and patients praised his compassion and bedside manner.

SSgt JR was a medical technician at USAFA and had been in the Air Force for 15 years. She first met the appellant in July 2009 when he was assigned as her Primary Care Manager (PCM). The appellant's medical treatment of SSgt JR later included prescribing medication for treatment of her anxiety, panic attacks, and depression due to her recent divorce and physical separation from her children who lived with her ex-husband. Over the course of several months, the appellant engaged in an unprofessional relationship with SSgt JR, including socializing after duty hours, a date at the zoo, sexual contact, and adultery. The appellant continued as her PCM while they were engaged in this unprofessional affair. SSgt JR also worked with the appellant when she was reassigned to the Family Practice Clinic.

In early February 2010, SSgt JR became distraught and was voluntarily admitted by the appellant for inpatient resident treatment at an off-base facility. SSgt JR authorized the appellant to provide her contact information to her ex-husband, Capt RD, so that Capt RD could reach her if he needed to communicate with her about their children. The appellant provided Capt RD with not only the contact information but also a copy of the appellant's most recent clinic note regarding SSgt JR. After receiving this e-mailed copy of his ex-wife's medical records, Capt RD had concerns about his interactions with the appellant and asked his ex-wife about the appellant's odd behavior.

---

[2] The appellant also raised the issue of the legal and factual sufficiency of his conviction for negligent dereliction of duty for failing to refrain from e-mailing sensitive medical notes to the ex-husband of Staff Sergeant (SSgt) JR. The appellant now characterizes it as two separate issues: first, the failure of the Government to prove the release was not with the permission of SSgt JR, and second, the Government failing to disprove the affirmative defense of mistake of fact as to permission. We address both issues as one related assignment of error.

SSgt JR informed Capt RD that she and the appellant were "seeing each other." Capt RD informed the appellant's chain of command, and the squadron commander ordered the appellant not to have any contact with SSgt JR. However, the appellant chose to violate this order on at least 15 occasions. The appellant later made false official statements to an investigating officer, stating he had only a professional relationship with SSgt JR because she was a medical technician who worked with him, was the non-commissioned officer in charge of the Family Practice Clinic, and was his patient.

The appellant's misconduct was not limited to interactions with SSgt JR. He also attempted to establish an unprofessional relationship with SSgt CH while she was his patient, by kissing her on the mouth during a medical appointment, asking her out to dinner, and inviting her over to his personal residence after the appointment. The appellant later made a false official statement to an investigating officer by denying he kissed her.

The appellant also attempted to establish an unprofessional relationship with A1C TB, a medical technician. He invited her to his personal residence "if [she] wanted to be daring," played with her hair, and reached into her shirt on the pretext of fixing her uniform. The appellant also invited her to dinner and, through text messages, believed he was arranging to meet her for an afternoon assignation. The appellant also assaulted another medical technician he worked with by tickling her waist.

After being removed from patient care and from the Medical Group, the appellant was detailed to work at the Plans and Programs office. While there, he made inappropriate comments to a female staff sergeant by mimicking a provocative strip-tease song as she removed her outer fleece jacket. He convinced her to walk on his back to help with his "back problems." Although she was initially reluctant to walk on his back, the appellant was persistent and convinced her to do so, in part by reassuring her, "Trust me; I am a doctor."

*Military Duty*

A military duty may be imposed by a "standard operating procedure[] or custom of the service." *Manual for Courts-Martial, United States*, Part IV, ¶ 16.c.(3)(a) (2008 ed.); *see also United States v. Tanksley*, 36 M.J. 428, 430 (C.M.A. 1993). Furthermore, to the extent military duties are not clearly assigned, "common sense and military custom help fill in the gaps." *United States v. Shelly*, 19 M.J. 325, 328 (C.M.A. 1985). Evidence must be presented at trial to prove the existence of a duty in order to satisfy the first element of an Article 92(3), UCMJ, 10 U.S.C. § 892(3) offense. *Tanksley*, 36 M.J. at 430. The appellant's case is distinguishable from *United States v. Hayes*, 71 M.J. 112 (C.A.A.F. 2012), where our superior court held a conviction for dereliction of duty for underage consumption of alcohol was not supported by the evidence in the record when the only evidence of a duty was state law. In *Hayes*, there

was no evidence in that record that the appellant was bound by military duty to obey Nevada's alcohol law. In this record of trial, we find sufficient evidence to establish that the appellant had a military duty to refrain from e-mailing sensitive medical notes to a third party without the permission of the patient.

The evidence in the record established the appellant was a captain who was assigned as a family practice physician. Colonel TH, a dentist who served as an investigating officer and interviewed the appellant, testified that health-care documents are required to be protected and can only be shared with other personnel if the patient permits the release. When asked if the requirement to obtain a patient's waiver of confidentiality is contained in a regulation, he responded that it was and the viewing of the documents by someone else must be approved. Lieutenant Colonel (Lt Col) JJ, a pharmacist, testified that there is *absolutely* an obligation to safeguard medical records. Lt Col JJ explained that protocols codified in the Health Insurance Portability and Accountability Act (HIPAA), 42 U.S.C. § 201 *et seq.*, control how and when medical information can be shared with third parties. The record of medical care, which contains medical notes completed by a treating physician, including the appellant's own notes, includes a notice that the records are protected from unauthorized disclosure: "This information is protected by the Privacy Act of 1974 (PL-93-579). Unauthorized Access to this information is a violation of federal law. Violators will be prosecuted." The e-mail the appellant sent, which contained the medical information he was convicted of unlawfully disclosing, also included this disclosure after his signature block:

> This document may contain information covered under the Privacy Act, 5 USC [sic] 552(a) and/or the Health Insurance Portability and Accountability Act (PL 104-191) and its various implementing regulations and must be protected in accordance with these provisions. Healthcare information is personal and sensitive and must be treated accordingly. If this correspondence contains healthcare information it is being provided to you after appropriate authorization from the patient or under circumstances that don't require patient authorization. You, the recipient, are obligated to maintain it in a safe, secure and confidential manner. Redisclosure without additional patient consent or as permitted by law is prohibited. Unauthorized redisclosure or failure to maintain confidentiality subjects you to application of appropriate sanction.[3]

---

[3] Air Force Instruction (AFI) 41-210, *Tricare Operations and Patient Administration Functions*, ¶ 6.16.3 (6 June 2012), requires a statement similar to the appellant's warning statement be included in all e-mails containing personally identifiable information, as well as confirming all recipients are authorized to receive the information. The 22 March 2006 version of AFI 41-210 was in effect at the time of the appellant's e-mail transmission and was referenced by the Article 32, UCMJ, 10 U.S.C. § 832, investigating officer. However, the Government inexplicably did not offer this AFI into evidence; therefore, we do not consider it in determining either legal or factual sufficiency.

We find the evidence submitted at trial establishes the appellant who performed his military duty as a staff physician at the family practice clinic had a corresponding military duty to protect the confidentiality of the medical records of his patients. The evidence is legally and factually sufficient to establish this duty was a military duty.

*Factual and Legal Sufficiency*

We review issues of factual and legal sufficiency de novo. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the accused's guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987). In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399.

"The test for legal sufficiency of the evidence is whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002) (citations and internal quotation marks omitted). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001).

The appellant was originally charged with willful dereliction of duty for failing "to refrain from E-mailing sensitive medical notes to the former husband of [SSgt JR] without the permission of [SSgt JR]." The military judge, as the finder of fact, found the appellant not guilty of willful dereliction of duty, but guilty of the lesser included offense of negligent dereliction of duty.

When SSgt JR told the appellant she wanted him to notify Capt RD (her former husband) of her hospital admission and to give him her contact information, the appellant emailed Capt RD an attachment of his most recent clinic notes. The clinic notes included all current prescribed medications and the appellant's summary of SSgt JR's mental health condition that resulted in her referral to inpatient treatment. The e-mail included the disclaimer: "Healthcare information is personal and sensitive and must be treated accordingly."

In response to trial counsel's questions at trial, SSgt JR testified:

Q.   Did you ever have a particular conversation with [the appellant] concerning written medical records while you were inpatient?

A.  No, sir.  I did not.

Q.  Did you ever give permission to [the appellant] to release your medical records to your husband?

A.  No, sir.  I did not.

. . . .

Q.   Did you give permission to [the appellant] to release any medical information about you other than where you were currently staying?

A.  No, sir.

As he did at trial, the appellant argues the evidence is insufficient to find him guilty of dereliction of duty because it reveals SSgt JR authorized the release of her location for inpatient treatment and all information regarding her medical treatment.  In the alternative, he argues that, even if she did not authorize the release, he honestly believed she had, and this belief was reasonable under the circumstances.  We disagree.

Having weighed the evidence in the record of trial, with allowances for not having personally observed the witnesses, including SSgt JR, we are personally convinced beyond a reasonable doubt of the appellant's guilt of the lesser included offense of negligent dereliction of duty.  Similarly, we find a reasonable factfinder could have found all the essential elements beyond a reasonable doubt.

*Article 134, UCMJ, Offense of Adultery*

The appellant asserts that Specification 1 of Charge VII fails to state an offense because it fails to allege any of the three clauses of the terminal element of Article 134, UCMJ.  Whether a specification states an offense is a question of law we review de novo. *United States v. Crafter*, 64 M.J. 209, 211 (C.A.A.F. 2006).  In *United States v. Fosler*, 70 M.J. 225, 233 (C.A.A.F. 2011), a contested case, our superior court held that when an Article 134, UCMJ, specification fails to allege the terminal element, it fails to state an offense.  Our superior court has also held that, in a guilty plea case, where the military judge describes clauses 1 and 2 of Article 134, UCMJ, during the plea inquiry, and where "the record conspicuously reflects that the accused clearly understood the nature of the prohibited conduct as a violation of clause 1 or clause 2" of Article 134, UCMJ, there is no prejudice to a substantial right.  *United States v. Ballan*, 71 M.J. 28, 35 (C.A.A.F. 2012) (quoting *United States v. Medina*, 66 M.J. 21, 28 (C.A.A.F. 2008)) (internal

alterations and quotation marks omitted). *See also United States v. Nealy*, 71 M.J. 73 (C.A.A.F. 2012).

Here, the appellant did not challenge the sufficiency of the specification at trial and pled guilty to the charge and specification of adultery. The military judge conducted a thorough plea inquiry and described and defined both clauses 1 and 2 of the terminal elements of Article 134, UCMJ. He asked the appellant whether he believed his conduct was prejudicial to good order and discipline, service discrediting, or both. The appellant acknowledged understanding of all the elements and explained to the military judge why he believed his conduct was both prejudicial to good order and discipline and service discrediting. Thus, "while the failure to allege the terminal elements in the specification[s] was error, under the facts of this case the error was insufficient to show prejudice to a substantial right." *See United States v. Watson*, 71 M.J. 54, 59 (C.A.A.F. 2012); *Ballan*, 71 M.J. at 36; *Nealy*, 71 M.J. at 77–78.

*Appellate Review Time Standards*

We review de novo "[w]hether an appellant has been denied [his] due process right to a speedy post-trial review . . . and whether [any] constitutional error is harmless beyond a reasonable doubt." *United States v. Allison*, 63 M.J. 365, 370 (C.A.A.F. 2006). A presumption of unreasonable delay arises when appellate review is not completed and a decision is not rendered within 18 months of the case being docketed before this Court. *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). The *Moreno* standards continue to apply as a case remains in the appellate process. *United States v. Mackie*, 72 M.J. 135, 135–36 (C.A.A.F. 2013). The *Moreno* standard is not violated when each period of time used for the resolution of legal issues between this Court and our superior court is within the 18-month standard. *Id*. at 136; *United States v. Roach*, 69 M.J. 17 (C.A.A.F. 2010). However, when a case is not completed within 18 months, such a delay is presumptively unreasonable and triggers an analysis of the four factors elucidated in *Barker v. Wingo*, 407 U.S. 514 (1972), and *Moreno*. *See United States v. Arriaga*, 70 M.J. 51, 55 (C.A.A.F. 2011). Those factors are "(1) the length of the delay; (2) the reasons for the delay; (3) whether the appellant made a demand for a speedy trial; and (4) prejudice to the appellant." *United States v. Mizgala*, 61 M.J. 122, 129 (C.A.A.F. 2005); *see also Barker*, 407 U.S. at 530.

This case was docketed for appeal on 5 April 2011. After considering briefs from counsel, we rendered our initial decision on 1 August 2013. The overall delay of more than 540 days between the time of docketing and the initial review by this Court is facially unreasonable. *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). As stated earlier in this opinion, our superior court recently decided that one of the judges who participated in that decision was not properly appointed, and subsequently the appellant's case remains in the appellate process. Accordingly, we have considered the appellant's court-martial before a properly constituted panel and issue this decision. The

time between our superior court's action and this decision did not exceed 18 months; therefore, the *Moreno* presumption of unreasonable delay is not triggered for this period of time.

We analyze the Barker factors for the delay leading up to our decision. The first factor weighs in favor of the appellant; the length of the delay between docketing and our decision is presumptively unreasonable. *See Moreno*, 63 M.J. at 142.

The second factor weighs in favor of the appellant. The appellant filed three enlargements before filing his assignment of errors on 30 December 2011. The case was joined in late February 2012. The longest delay in this case was from the time the case was docketed until we issued our initial decision. Although this Court was undergoing significant personnel changes at the time,[4] we are mindful of our superior court's emphasis that the established benchmarks do not create a free period, and "personnel and administrative issues . . . are not legitimate reasons justifying otherwise unreasonable post-trial delay." *Arriaga*, 70 M.J. at 57. However, our superior court also applies "a more flexible review of [the appellate deliberative process], recognizing that it involves the exercise of the Court of Criminal Appeals' judicial decision-making authority." *Moreno*, 63 M.J. at 137.

Third, although the Government carries the burden of primary responsibility for speedy post-trial processing, *United States v. Bodkins*, 60 M.J. 322, 323–24 (C.A.A.F. 2004), the appellant did not assert his right to speedy post-trial processing before this court until after our initial decision. However, after we addressed the presumptively unreasonable delay in our first opinion, the appellant raised this as an issue in his petition for grant of review to our superior court on 23 October 2013. Finally, on the fourth factor, the appellant fails to demonstrate any prejudice in this case. The appellant was released from confinement prior to his first request for an enlargement of time. "An appellant must demonstrate a 'particularized anxiety or concern that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision.'" *Arriaga*, 70 M.J. at 58 (quoting *Moreno*, 63 M.J. at 140). Here, the appellant has not done so.

When there is no showing of prejudice under the fourth factor, "we will find a due process violation only when, in balancing the other three factors, the delay is so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006).

---

[4] An en banc decision by this Court released on 9 August 2013 referenced, for example, the fact that five appellate judges did not participate in that decision due to their recent assignments to the Court relative to the deliberative process and oral argument in that case. *See United States v. Witt*, 72 M.J. 727, 776 n.17 (A.F. Ct. Crim. App. 2013), *vacated upon reconsideration*, __ M.J. __ (A.F. Ct. Crim. App. 2014).

Having considered the totality of the circumstances and the entire record, when we balance the other three factors, we find the post-trial delay in this case not to be so egregious as to adversely affect the public's perception of the fairness and integrity of the military justice system. We are convinced the error is harmless beyond a reasonable doubt.

While we find the post-trial delay was harmless, that does not end our analysis. Article 66(c), UCMJ, empowers appellate courts to grant sentence relief for excessive post-trial delay without the showing of actual prejudice required by Article 59(a), UCMJ, 10 U.S.C. § 859(a). *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002); *see also United States v. Harvey*, 64 M.J. 13, 24 (C.A.A.F. 2006). In *United States v. Brown*, 62 M.J. 602, 606–07 (N.M. Ct. Crim. App. 2005), our Navy and Marine Court colleagues identified a "non-exhaustive" list of factors to consider in evaluating whether Article 66(c), UCMJ, relief should be granted for post-trial delay. Among the non-prejudicial factors are the length and reasons for the delay; the length and complexity of the record; the offenses involved; and the evidence of bad faith or gross negligence in the post-trial process. *Id.* at 607. We find there was no bad faith or gross negligence in the post-trial processing in any stage of the appellate review of this matter. The reason for the delay between 1 August 2013 and our opinion today was to allow this Court and our superior court to fully consider a constitutional issue of first impression—*i.e.*, whether the Secretary of Defense has the authority under the Appointments Clause[5] to appoint civilian employees to the service courts of criminal appeals. We conclude that sentence relief under Article 66, UCMJ, is not warranted.

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred.[6] Articles 59(a) and 66(c), UCMJ; *United States v. Reed*, 54 M.J. 73, 41 (C.A.A.F. 2000).

---

[5] U.S. CONST. art II § 2, cl 2.

[6] The staff judge advocate's recommendation (SJAR) did not address the military judge's clemency recommendation to waive forfeitures. However, this clemency recommendation was provided earlier to the convening authority as part of the staff judge advocate's response to trial defense counsel's request for deferment and waiver of forfeitures. The convening authority waived but did not defer the forfeitures. This issue was not raised by either trial or appellate defense counsel. Furthermore, since the staff judge advocate had earlier informed the convening authority of the clemency recommendation and the convening authority's action matched that recommendation, there is no prejudice to the appellant. *See United States v. Capers*, 62 M.J. 268 (C.A.A.F. 2005).

Accordingly, the findings and the sentence are

AFFIRMED.

FOR THE COURT

STEVEN LUCAS
Clerk of the Court